IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LACY E. TILLEY, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No.09-299 |
| | ) Judge Arthur J. Schwab/ |
| ALLEGHENY COUNTY JAIL; | ) Chief Magistrate Judge Amy Reynolds Hay |
| RAMON RUSTIN, Warden; | ) |
| U.S. MARSHALL SUPERVISOR; | ) |
| C.0. BUTLER; CAPTAIN LEIGHT; | ) |
| CAPTAIN MAUST; CAPTAIN | ) |
| STANTON; SERGEANT COULTER; | ) |
| KENGERSKI; C.O. KOVAC; | ) |
| ALLEGHENY COUNTY HEALTH | ) |
| SERVICES; DANA PHILLIPS; DR. | ) |
| MEBANE; NURSE NANCY, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**RECOMMENDATION**

It is respectfully recommended that Plaintiff's motion for a temporary restraining order and/or preliminary injunction be denied.

**REPORT**

**Procedural History**

Lacy E. Tilley ("Plaintiff") is a federal prisoner who was sentenced in one of his federal criminal trials on July 15, 2008.[1]  He is also awaiting sentencing on other federal criminal

---

[1] U.S.A. v. Lacy Tilley, No. 2:06-CR-222 (Dkt. [124] judgment of sentence entered requiring Plaintiff to serve 87 months of incarceration for possession of a firearms by a convicted felon).

charges in two other cases before Judge Conti,[2] after having pleaded guilty to the charges therein. Plaintiff is currently being housed in the Allegheny County Jail as a federal prisoner. He has been there since August 2007. Dkt. [5] at 4, ¶ 19.

In March 2009, Plaintiff filed a motion for preliminary and permanent injunction and/or temporary restraining order, together with his original complaint . These motions were not assigned a separate docket number. In his original complaint, Plaintiff named the U.S. Marshal Supervisor, and employees of the Allegheny County Jail ("ACJ") as defendants. Dkt. [5]. In that original complaint, Plaintiff complained about the conditions of his confinement in the ACJ. Subsequently, Plaintiff filed, as of right, an amended complaint, Dkt. [15], wherein he complained of many of the same conditions of confinement as he had in the original complaint but added four defendants: (1) Allegheny County Health Services ("ACHS"); (2) Dana Philips, director of ACHS; (3) Dr. Mebane, a psychiatrist who works with ACHS; and (4) Nurse Nancy. In the amended complaint, Plaintiff added claims of medical deliberate indifference. In the amended complaint, Plaintiff also deleted several defendants who were named in the original complaint. The deleted defendants were: (1) Lance Bohn, ACJ Deputy Warden; (2) Barry Emmerick, ACJ Deputy Warden; and (3) Captain Pofi. In November 2009, Plaintiff filed a second motion for preliminary injunction and/or temporary restraining order. Dkt. [21]. In that motion, he again complained of the conditions of confinement much like he had in the original motions for injunctive relief. The Court, in a brief order, denied the second set of motions for

---

[2] The two cases are as follows: (1) U.S.A. v. Tilley, No. 2:07-CR-290 (Dkt. [47] plea entered to Count 10 alleging mail fraud, however, subsequently, he has sought to withdraw his guilty plea, Dkt. [78]); (2) U.S.A. v. Tilley, No. 2:09-CR-43 (Dkt. [23] plea entered on 7/22/09, pleading guilty to Count One charging wire fraud, although again, Plaintiff has recently sought to withdraw the plea, Dkt. [155]).

injunctive relief, which Plaintiff filed in November 2009. Dkt. [25]. The present report addresses the first set of motions for injunctive relief and also explains in more detail the reasons for denying the second set of injunctive relief motions filed in November 2009.[3]

**LEGAL STANDARDS**

In determining whether a preliminary injunction[4] is warranted, a court must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999) (citing ACLU v. Black Horse Pike Regional Bd. of Educ., 84 F.3d 1471,

---

[3] At the outset, the Court notes that Plaintiff invokes 42 U.S.C. § 1983 as the jurisdictional basis for this suit. Dkt. [5] at 1, ¶ 1; Dkt. [15] at 1, ¶ 1. The trouble with this assertion is that Plaintiff is a federal prisoner, technically in the custody of the United States Marshal who contracts with the ACJ to house federal prisoners. Thus, an argument could be made that a Bivens action is more appropriate given that the ACJ defendants are agents for the U.S. Marshal and, thus, are acting under color of federal, not state law. At this stage of the proceedings, and for the purposes of deciding the injunctive relief motions, it may not be necessary to resolve this thorny question and we will not do so but will assume Section 1983 is the proper basis. See, e.g., Pettiford v. City of Greensboro, 556 F.Supp.2d 512, 536 (M.D.N.C. 2008); Jarno v. Lewis, 256 F.Supp.2d 499 (E.D.Va. 2003).

[4] Because the standards for the grant of a preliminary injunction and a temporary restraining are the same, the court's analysis of the preliminary injunction will also dispose of Plaintiff's request for a TRO. Babn Technologies Corp. v. Bruno, No. Civ.A. 98-3409, 1998 WL 720171, at *3 (E.D.Pa. Sept. 2, 1998) ("The standard for a temporary restraining order is the same as that for a preliminary injunction. *Bieros v. Nicola*, 857 F.Supp. 445, 446 (E.D.Pa. 1994)."); Cooper v. City of Philadelphia, 18th District, No. Civ.A. 93-3007, 1993 WL 274192, at *1 (E.D.Pa. July 2, 1993)("The standards for a temporary restraining order and a preliminary injunction are the same."). The distinguishing features between these two forms of injunctive relief are that temporary restraining orders may be issued ex parte without an adversary hearing and are of limited duration, whereas preliminary injunctions may be issued only after the opposing party receives notice, and the injunction remains in force until the completion of the trial on the merits. Babn Technologies, 1998 WL 720171, at *3.

1477 n. 2 (3d Cir. 1996) (en banc)).   It is the movant's burden to demonstrate that he merits the grant of the preliminary injunctive relief.  Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 90-91 (3d Cir. 1992)("In order to support a preliminary injunction, plaintiff must show both a likelihood of success on the merits and a probability of irreparable harm.").  Further, a Court is to bear constantly in mind that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." Plain Dealer Publishing Co. v. Cleveland Type. Union # 53, 520 F.2d 1220, 1230 (6th Cir. 1975).  As a corollary of this principle, our Third Circuit Court of Appeals has observed that "upon an application for a preliminary injunction to doubt is to deny."  Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir. 1937).  See also Armstrong World Industries, Inc. v. Allibert, No. Civ. 97-3914, 1997 WL 793041, at *15  (E.D. Pa. Nov. 26, 1997) ("The 'extraordinary remedy' of a preliminary injunction is proper only in limited circumstances. . . .   Courts in this District and Circuit apply the equitable maxim that 'to doubt is to deny.'") (citing Madison Square Garden Corp.); Graham v. Triangle Publications, Inc., 233 F.Supp. 825, 829 (E.D.Pa. 1964), *aff'd*, 344 F.2d 775 (3d Cir. 1965); Spirol Int'l Corp. v. Vogelsang Corp., 652 F.Supp. 160, 161 (D.N.J. 1986)).  Moreover, it is plaintiff's burden to show that the "preliminary injunction must be the only way of protecting the plaintiff from harm."  Campbell Soup Co. v. ConAgra, Inc., 977 F.2d at 91.  Additionally, a "plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'  The 'requisite feared injury or harm must be irreparable-not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" Id., at 91-92.

    With these standards in mind, the Court considers Plaintiff's motion.

With respect to the first prong, Plaintiff has not shown a reasonable likelihood of success on the merits. Plaintiff appears to make a First Amendment access to courts claim in both of his complaints, which is also the subject of his motions for injunctive relief. Dkt. [9] at 3. Plaintiff complains that he is often times thrown into solitary confinement at the ACJ, which denies him access to the law library, and that the defendants confiscate his legal materials. He seeks injunctive relief to stop this because he complains that, in his criminal cases, he is proceeding or seeks to proceed pro se and, thus, is in need of the law library and his legal materials.

We note that from July 13, 2006 to February 15, 2007, Plaintiff was represented by Attorney Baginski in Case No. 06-CR-222 (Dkt. Nos. [13] & [53]), and that from February 15, 2007, until at least January 8, 2008, see id., at Dkt. [85], Plaintiff was represented by Attorney Capone, and from February 4, 2008 and continuing to the present, Plaintiff has been represented by Attorney Eyster, and it appears that Plaintiff wishes Attorney Eyster to represent Plaintiff on appeal in that case. Id., at Dkt. [136]. Thus, throughout all of the proceedings in No. 06-CR-222, Plaintiff was represented by counsel. In light of the fact that he has access to the courts as a matter of law through his counsel, he cannot make out a First Amendment right of access to courts claim.

The rule is that where an inmate is represented by counsel, his right of access to the courts is satisfied as a matter of law. Lamp v. Iowa, 122 F.3d 1100, 1106 (8th Cir. 1997) ("For, once the State has provided a petitioner with an attorney in postconviction proceedings, it has provided him with the 'capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'") (quoting Lewis v. Casey, 518 U.S. 343, 356 (1996)); Schrier v. Halford, 60 F.3d 1309, 1313-1314 (8th Cir. 1995) (having appointed counsel is one way in which

state can shoulder its burden of assuring access to the courts); Annis v. Fayette County Jail, NO. CIV.A. 07-1628, 2008 WL 763735, at *1 (W.D.Pa. Mar 20, 2008); Sanders v. Rockland County Correctional Facility, No. 94 Civ. 3691, 1995 WL 479445, at *2 (S.D.N.Y. Aug. 14, 1995) ("By the appointment of counsel, plaintiff was afforded meaningful access to the courts in his trial."); Williams v. Vaughn, No. 90-5617, 1991 WL 34429, at *4 (E.D.Pa. March 12, 1991) ("Thus, [plaintiff-inmate] Williams was not actually injured by any inability to gain access to the law library since he ultimately obtained representation."). This rule of law makes eminent sense in light of Bounds v. Smith, 430 U.S. 817 (1977), which held that inmates must be provided with access to the courts by "providing prisoners with adequate law libraries **or** adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828 (emphasis added).

All of the foregoing is true notwithstanding the fact that Plaintiff chose to proceed pro se in his two most recent criminal cases at various times because in those cases he had or could have had counsel appointed for him but he chose to proceed pro se. See, e.g., United States ex rel. George v. Lane, 718 F.2d 226, 231 (7th Cir. 1983) ("we do not read Bounds to give an option to the prisoner as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that Bounds has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it offered defendant the assistance of counsel which he declined. We so hold."); Love v. Summit County, 776 F.2d 908, 914 (10th Cir. 1985) (state is entitled to choose whether it will meet its obligation to provide access to the courts by providing an adequate law library or by providing legal assistance in the form of an attorney). Hence, Plaintiff fails to make a denial of access to courts

claim as a matter of law and, so, there being no denial of any federal right, there is no basis on which to order any injunctive relief. See, e.g., Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 340 (1999)("Under standards governing preliminary injunctive relief generally, a plaintiff must show a likelihood of success on the merits and irreparable injury in the absence of an injunction.").[5,6]

We turn next to Plaintiff's claim his placements in solitary confinement violated his right to procedural due process. Plaintiff seeks injunctive relief to prevent such placement, see, e.g., Dkt. [9], at 3. However, again Plaintiff fails to show a likelihood of success on the merits as he entirely fails to show that he was deprived of a liberty interest, given the shortness of his stays in solitary confinement. It appears that Plaintiff was in segregation or solitary confinement for

---

[5] To the extent that Plaintiff bases his denial of access to courts claim upon his not having his legal materials, we note yet another reason for concluding that Plaintiff fails to show a likelihood of success on the merits as he conceded that he "was given all legal materials," Dkt. [5], at 14, ¶ 76, which appears to have occurred in August 2008.

[6] Plaintiff also complains that his legal mail was opened outside of his presence. However, the only piece of legal mail he points to in his original complaint was mail from this Court's Clerk Office providing him forms for filing this action. Dkt. [5] at 19, ¶ 106. Plaintiff clearly suffered no injury from the opening of such mail given that he has filed this suit and vigorously pursued it and, hence, his claim of denial of access based upon such opening fails to state a claim. See, e.g., Jones v. Brown, 461 F.3d 353, 359 n.6 (3d Cir. 2006)(requiring the showing of an actual injury to a real case in order to establish denial of access to courts, in contrast to making a free speech claim, which requires no such injury). See also Foreman v. Lowe, 261 Fed.Appx. 401, 404 (3d Cir. 2008)("an inmate must allege an actual injury to his ability to litigate a claim to demonstrate that his constitutional right of access to the courts has been violated. An actual injury is shown only where a nonfrivolous, arguable claim is lost.") (citations omitted). To the extent that Plaintiff is attempting to make out a First Amendment free speech claim, he has done nothing to show that the Turner factors weigh in favor of finding that opening of clearly non-confidential mail is a violation of First Amendment right to confidential communications. This is true notwithstanding Plaintiff's conclusory argument that Turner does not apply if there is no legitimate penological interest at stake. Dkt. [9] at 2. Even if it were otherwise, Plaintiff has failed on the other prongs for injunctive relief as well.

relatively short periods of time. See, e.g., Dkt. [5] at 10 at ¶ 54 (after being in solitary for 67 days, he was released back in general population; Dkt. [5] at 11, ¶ 58 (indicating Plaintiff was in general population from January 2008 until August 2008, when based upon a confrontation with Defendant Kovac, Plaintiff was again placed in segregated housing or solitary confinement). Id., at 13, ¶¶ 69 to 76. We note that at the time he filed his present lawsuit, March 10, 2009, even assuming Plaintiff was in segregation or solitary confinement since August 2008, that would only amount to a period of time of roughly seven months. Under Sandin v. Conner, 515 U.S. 472 (1995), Plaintiff has failed to show a likelihood of success on the merits for his procedural due process claim. See e.g., Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (confinement in administrative custody for fifteen months with only one hour of exercise per day five days per week did not amount to an atypical and significant hardship and thus did not deprive prisoner of a liberty interest); Siddiq v. Edlund, 8 Fed.Appx. 522, 524 (6th Cir. 2001)("placement in administrative segregation [for twenty months] did not constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"); Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (administrative confinement for two and one-half years was not atypical and significant)(cited approvingly in Fraise v. Terhune, 283 F.3d 506, 523 (3d Cir. 2002)); Bryant v. Cortez, 536 F.Supp.2d 1160 (C.D.Cal. 2008)(placement of state inmate in administrative segregation unit for eighteen months pending resolution of disciplinary charge against him did not impose atypical and significant hardship on inmate in relation to ordinary incidents of prison life, and thus did not violate inmate's due process rights, even though placement entailed restrictions on inmate's exercise, shower, hygiene, and visitation privileges, and denial of work and educational opportunities, and state law required officials to conduct

disciplinary hearing within thirty days); Washington-El v. Diguglielmo, No. 06-CV-4517, 2008 WL 2954745 (E.D.Pa. July 29, 2008)(17 months in administrative custody is not atypical and significant so as to qualify as a liberty interest); Smith v. Luciani, No. Civ. A. 97-3037, 1998 WL 151803, at *5 (E.D. Pa. March 31, 1998) ("In this case, plaintiff was subjected to seven months disciplinary time, a period of time half of that implicated in *Griffin*.  Therefore, punishment of seven months in administrative custody, does not present 'the type of atypical, significant deprivation [in the context of prison life] in which a state might conceivably create a liberty interest.' *Sandin*, 515 U.S. at 486 (1995)."), aff'd, 178 F.3d 1280 (3d Cir. 1999) (Table). Having been deprived of no liberty interest, Plaintiff was not constitutionally entitled to any process.   Hence, because the time he spent in solitary confinement at any given stretch was less than 17 months and so no liberty interest was at stake pursuant to Griffin, Plaintiff was not entitled under the federal Constitution to any procedural protections.  Nor do Plaintiff's allegations regarding the conditions of solitary confinement (e.g., light on for 24 hours), sparse as they may be, and lacking any allegation of time frame as to the length of time he was exposed to such, establish that he endured an atypical and significant hardship.

As to any Fourteenth Amendment deliberate indifference claim, based upon his falling in the shower in October/November 2007[7] and allegedly injuring his mid-section, for which he may be seeking injunctive relief, again Plaintiff fails to show a likelihood of success on the merits. Plaintiff fell in the shower on the evening before jury selection was to take place. Dkt. [5] at 5, ¶ 25.  Plaintiff was seen by a nurse in the federal courthouse the following morning, who

---

[7] The Eighth Amendment would not apply to any time prior to July 15, 2008, because Plaintiff was not convicted nor sentenced yet. See, e.g., Lewis v. Downey, 581 F.3d 467, 474-75 (7th Cir. 2009).

9

determined that no visible blood was present in Plaintiff's urine.  Plaintiff has not shown a denial of medical care but, at most, a delay of roughly 12 hours in obtaining medical care.   He has alleged no further injury arising from this "delay" and thus fails to show a likelihood of success on the merits.  Heard v. Sheahan, 148 Fed.Appx. 539 (7th Cir. 2005)(Illinois inmate failed to show that jail officials acted with deliberate indifference toward inmate's serious medical need in violation of Fourteenth Amendment by delaying surgery for his hernia while he was in pre-trial detention, where inmate presented no evidence that jail administrators knew that the delays they were contemplating in scheduling surgery created a substantial risk of medical harm); Marshall v. Penn Tp., 2009 WL 3241873, at *10 (W.D.Pa. Oct. 6, 2009) ("Where, as here, the Fourteenth Amendment claim is based on delay in providing medical treatment, the delay does not rise to the level of a constitutional violation unless it results in substantial harm.").  Cf.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993)("delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in . . . harm."); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000)("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in . . . harm."); Brooks v. Kyler, 204 F.3d 102, 105 n.4 (3d Cir.  2000) (the prisoner-plaintiff "presented no evidence of any harm resulting from a delay in medical treatment.").

Plaintiff also attempts to make out a claim that Defendant Kovac violated his right to be free from risk of serious injury when Defendant Kovac allegedly spread rumors about Plaintiff being a "snitch."  We find that this claim fails under the other three prongs for obtaining injunctive relief.

We turn next to the second prong.  As noted above, in order to merit the grant of a

preliminary injunction, Plaintiff bears the burden of establishing a "clear showing of immediate irreparable injury" under the second prong.  Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989).  This is not an easy burden.  Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000).  For "a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future.  Rather, the moving party must make a clear showing of *immediate* irreparable harm."  Campbell Soup, 977 F.2d at 91 (internal quotations omitted).  For "the claimed injury cannot merely be possible, speculative or remote."  Dice v. Clinicorp, Inc., 887 F. Supp. 803, 809 (W.D. Pa. 1995).  An injunction is not issued "simply to eliminate a possibility of a remote future injury. . . ."  Acierno v. New Castle County, 40 F.3d 645, 655 (3d Cir. 1994) (citations omitted).  Merely "[e]stablishing a risk of irreparable harm is not enough.   A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'"  Hohe v. Casey, 868 F.2d at 72.   The facts must clearly support a finding that immediate and irreparable injury will result to the movant if preliminary relief is denied.  United States v. Stazola, 893 F.2d 34, 37 n.3 (3d Cir. 1990).  Absent a showing of immediate, irreparable injury, the court should deny preliminary injunctive relief.  Id.

     Plaintiff's allegations fail to show any immediate irreparable injury that will result from the Court's denial of his motions for injunctive relief.  Here, Plaintiff has failed to make the necessary showing of immediate irreparable injury.  Furthermore, where a plaintiff requests an injunction that would require the Court to interfere with the administration of a state's prison or jail, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief."  Rizzo v. Goode, 423 U.S. 362, 379 (1976).  The federal courts are not overseers of the day-to-day management of prisons.  Prison officials require

broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 527 (1979). Plaintiff has simply failed to show that he would suffer immediate irreparable injury that would justify this Court's interference with the Defendants' administration of ACJ and their determination of where Plaintiff is best housed. We further note, in light of Plaintiff's complaints of Defendant Kovac allegedly labeling Plaintiff a snitch, that Plaintiff also notes he has spent much time in solitary confinement, where access to prisoners by other prisoners is extremely restricted if not non-existent, and so, there is no likelihood of any harm from other prisoners let alone an immediate threat of irreparable harm. To the extent that Plaintiff has not been in solitary confinement for any length of time, the fact that he has not been harmed also suggests that Plaintiff is not really in threat of immediate harm. This may well be a function of the turn over of prisoners at ACJ and that those whom Defendant Kovac allegedly told about Plaintiff may no longer be at ACJ or on the pod where Plaintiff is housed. Furthermore, we note that if Plaintiff believes he is in such danger, he may request to be placed in solitary confinement where the possibility of contact with other inmates is next to impossible. See, e.g., Dkt. [5] at 14, ¶ 74 (noting that "Plaintiff requested to be sent to the hole."). Hence, Plaintiff has a means other than injunctive relief to avoid any harm. Thus, he has failed to carry his burden to show that the "preliminary injunction . . . [is] the only way of protecting the plaintiff from harm." Campbell Soup Co. v. ConAgra, Inc., 977 F.2d at 91. Similarly, given that Plaintiff can proceed by counsel, he has not shown the

injunctive relief is the only way to protect him from any harm in his denial of access to courts claim, let alone has he made the requisite showing of irreparable harm.

We next consider the third prong. The balancing of harms test essentially requires the court to measure the harm to the plaintiff, if the preliminary relief is erroneously denied, and the harm to the defendant, if the preliminary relief is erroneously granted. See Faheem-El v. Klincar, 841 F.2d 712, 717 (7th Cir. 1988)(a preliminary injunction analysis "requires the district court to assess the probability that each party will prevail on the merits and the harm of granting or withholding relief during the pendency of the suit.").

The harms to Plaintiff here are the possible denial of several of his constitutional rights.

The harms to the Defendants are also substantial because an erroneously entered preliminary injunction will impede the right of the Defendants to exercise their discretion in the operation of the Jail. See, e.g., Marchesani v. McCune, 531 F.2d 459, 461 (10th Cir. 1976) ("When a plaintiff seeks to enjoin or prohibit the activity of a government agency, his case must contend with the well-established rule that the government has traditionally been granted the widest latitude in the dispatch of its own internal affairs. *Cafeteria Workers v. McElroy*, 367 U.S. 886 (1961). Accordingly, when due process contentions are raised relative to the operation, maintenance and administration of the penal system, the courts should be acutely aware that caution must be exercised in achieving a careful balance of the interests of that system as against the interests of the prisoners."). There is a multiplicity of reasons this Court should not substitute its judgment for the informed judgment of the ACJ professionals charged with the administration of ACJ.

Of course, entering into the balancing of the harms calculus is the likelihood, in fact, that

the Plaintiff's rights are also being violated. The measurement of whether a Plaintiff's rights are being violated is conducted by considering the "reasonable probability of success on the merits" factor. However, the measurement of that factor must be considered within the context of the balancing of the harms test. Indeed, if it is highly likely that a plaintiff will succeed on the merits, it is more likely that he will suffer harms, *i.e.*, he will suffer the denial of his rights. If, on the other hand, the Plaintiff makes a weak showing with respect to the strength of his case, the more unlikely it is that he will suffer harms if the injunctive relief is denied and, the more likely it becomes that the defendant will suffer harms if injunctive relief is erroneously entered.

On this record, as noted, the Plaintiff's claims show little likelihood of success on the merits and, therefore, it does not appear that he will likely now suffer harms should his injunctive relief claims be denied. As a result, it is more likely that the entry of injunctive relief would infringe upon the Defendants' operation of the Jail and infringe on the Defendants' informed exercise of their discretion in operating the Jail. Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir. 1980) ("federal courts have an additional reason to show deference to the decisions of prison authorities, where a state penal institution is involved . . . . The possible injury to the defendant-appellants if the preliminary injunction stands is potentially grave. The informed discretion of these penological experts could be radically limited . . . with respect to prison discipline in general.").

We now turn to the fourth prong. "In considering where the public interest lies, it is essential to evaluate the possible effects upon the public from the grant or denial of injunctive relief." O'Burn v. Shapp, 521 F.2d 142, 152 (3d Cir. 1975). Entering a preliminary injunction against a local government's public servants clearly implicates the public's interests. Illinois

Psychological Assoc. v. Falk, 818 F.2d 1337, 1340 (7th Cir. 1987)("The public interest . . ., a traditional consideration in deciding whether to grant or deny an injunction . . . and considerations of comity toward the states as sovereign entities (greatly diminished sovereigns, to be sure), support our conclusion that state action should not be set at naught, even temporarily, without a showing that the plaintiff's legal rights have probably been infringed."). This consideration is even more true when the public servants are prison administrators and staff. See Wetzel v. Edwards, 635 F.2d at 288 (4th Cir. 1980) ("federal courts have an additional reason to show deference to the decisions of prison authorities, where a state penal institution is involved . . . ."). As the Supreme Court has stated, "[p]rison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody." Procunier v. Martinez, 416 U.S. 396, 404 (1974), overruled on other grounds by, Thornburgh v. Abbott, 490 U.S. 401 (1989). Indeed, "[p]rison administrators are specially trained and duly compensated by the public to handle the daily operation and maintenance of maximum security prisons. . . . In contrast to the vast majority of Federal judges, prison administrators possess a wealth of penological expertise and experience that qualifies them to supervise, discipline, and rehabilitate inmates within an ever-changing, complex prison system." Godinez v. Lane, 733 F.2d 1250, 1261 (7th Cir. 1984). Judicial deference is accorded their decisions "not merely because the administrator will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive branches of our Government, not the Judicial." Bell v. Wolfish, 441 U.S. 520, 548 (1979).

To be fair, the Court must consider the other side of the scale of public interest. Having a government's employees follow the federal Constitution is also in the public interest. See, e.g., Seattle Audubon Soc'y v. Evans, 771 F.Supp. 1081, 1096 (W.D. Wash. 1991)(where an administrative agency fails to comply with a statute "this invokes a public interest of the highest order: the interest in having government officials act in accordance with the law."). However, the weight a court should accord to the public interest which is based upon the duty of state agents to comply with federal law is again dependent on the strength of the Plaintiff's case on the merits, i.e., the strength of Plaintiff's showing that his rights are in fact being violated. As recognized supra, the Plaintiff's showing in this respect was generally wanting. The public interest in this case appears to weigh in favor of the Court exercising its discretion to refrain from interfering with the Defendants' operation of the ACJ. In sum, the public interest on the basis of what Plaintiff has contended weighs in favor of denying the Plaintiff's request for injunctive relief.

For all of the foregoing reasons, Plaintiff's first motion for a TRO and/or preliminary injunction should be denied.

The Court also notes that the foregoing reasoning applies equally to the Court's succinct order of November 16, 2009, which denied Plaintiff's second motion for injunctive relief. Dkt. [25]. Insofar as he adds a claim now that the ACJ is interfering not only with his access to the courts in his criminal cases but also with his access to this Court in the pursuit of this case, the Court notes that from evidence of the docket, he has been accessing this Court quite well and, furthermore, he has identified no injury to this present case from any alleged interference. Dkt. [21] at 1, ¶ 3. While Plaintiff alleges that he sent into this Court an appeal from the order

denying his second preliminary injunction motion, Dkt. [58] at 4, he concedes that he sent such appeal in with pleadings for his criminal cases and that the appeal in the civil case may have been inadvertently docketed wrongly.  Id.  In any event, such would not establish "injury" for First Amendment denial of access jurisprudence, given that it is clear the order denying the motion for injunctive relief was proper in light of the foregoing analysis.  Moreover, Plaintiff can always seek leave of court to file an appeal from that order out of time.  However, in light of the foregoing discussion, any such appeal would be frivolous.  Hence, no injury is established.

In the amended complaint, Plaintiff also added a claim of Eighth Amendment deliberate indifference, claiming that in May 2009,[8] Dr. Mebane arbitrarily stopped Plaintiff's psychiatric medications cold turkey.  Dkt. [15] at 30, ¶ 163.  Plaintiff complains that he suffers symptoms of withdrawal now.  It appears that this is somehow related to Plaintiff "hold[ing his] evening medication until later, " id. at ¶ 165, which the Court takes to mean, he did not swallow his medicine when given to him, although he intended to take the medicine later.  The Court is not unaware that drugs, prescribed or otherwise, are a form of currency in jail and prison.  While we accept as true for present purposes that Plaintiff intended to keep the drugs for his own use but at a later time, there is nothing that requires the Medical Staff at ACJ to believe such and that they may have concluded otherwise and decided Plaintiff was not in need of drugs that he attempted not to take at the prescribed time and removed him from those drugs simply is not deliberate indifference. This is especially true when Plaintiff himself had "prior to the colloquy to become pro se, the plaintiff opted to discontinue further mental health care and medications."  Dkt. [15]

---

[8] By this time, Plaintiff was a convicted and sentenced individual and hence, subject to the Eighth Amendment.

at 28, ¶ 146.  Hence, Plaintiff has failed to show a likelihood of success on the merits as to this Eighth Amendment claim and the order, denying his second motion for injunctive relief, was properly entered.

## CONCLUSION

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation, a copy of which docket entry is being mailed to Plaintiff along with the Report.  Failure to timely file objections may constitute a waiver of any appellate rights.  Any party opposing objections may file their response to the objections in accordance with Local Civil Rule 72.D.2.


        Respectfully submitted,

        /s/ *Amy Reynolds Hay*
        Chief United States Magistrate Judge

Dated: 18 February, 2010

cc:    The Honorable Arthur J. Schwab
       United States District Judge


       Lacy E. Tilley, Jr.
       #142623
       Allegheny County Jail
       950 Second Avenue
       Pittsburgh, PA 15219


    All counsel of record via CM-ECF