IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LACY E. TILLEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.09-299 |
| | ) | Judge Arthur J. Schwab/ |
| ALLEGHENY COUNTY JAIL; | ) | Chief Magistrate Judge Amy Reynolds Hay |
| RAMON RUSTIN, Warden; | ) | |
| U.S. MARSHALL SUPERVISOR; | ) | |
| C.0. BUTLER; CAPTAIN LEIGHT; | ) | |
| CAPTAIN MAUST; CAPTAIN | ) | |
| STANTON; SERGEANT COULTER; | ) | |
| KENGERSKI; C.O. KOVAC; | ) | |
| ALLEGHENY COUNTY HEALTH | ) | |
| SERVICES; DANA PHILLIPS; DR. | ) | |
| MEBANE; NURSE NANCY, | ) | |
| | ) | |
| Defendants. | ) | Re:  ECF No. 61 |

## **MEMORANDUM OPINION**

SCHWAB, District Judge

Presently before the Court is a Motion for Summary Judgment filed by the U.S. Marshal. For the reasons that follow, the motion (ECF No. 61) will be granted.

Lacy E. Tilley ("Plaintiff") is a federal prisoner who was sentenced in one of his federal criminal trials on July 15, 2008.[1] He is also awaiting sentencing on other federal criminal charges in two other cases before Judge Conti.[2] Plaintiff is currently being housed in the Allegheny County Jail as a federal prisoner. He has been there since August 2007. ECF No. 5 at

---

[1] U.S.A. v. Lacy Tilley, No. 2:06-CR-222 (ECF No. 124 judgment of sentence entered requiring Plaintiff to serve 87 months of incarceration for possession of firearms by a convicted felon).

[2] The two cases are as follows: (1) U.S.A. v. Tilley, No. 2:07-CR-290 W.D.Pa. ECF No. 119 setting sentencing hearing for 10/6/2010); (2) U.S.A. v. Tilley, No. 2:09-CR-43 (ECF No. 93 setting sentencing hearing for 10/6/2010).

4, ¶ 19.

In March 2009, Plaintiff filed his original complaint, in which he named the U.S. Marshal Supervisor, and employees of the Allegheny County Jail ("ACJ") as defendants and complained about the conditions of his confinement in the ACJ. ECF No. 5. Subsequently, Plaintiff filed an amended complaint, ECF No. 15, wherein he complained of many of the same conditions of confinement as he had in the original complaint but added four defendants: (1) Allegheny County Health Services ("ACHS"); (2) Dana Philips, director of ACHS; (3) Dr. Mebane, a psychiatrist who works with ACHS; and (4) Nurse Nancy (collectively "the Medical Defendants"). In the amended complaint, Plaintiff added claims of medical deliberate indifference.[3]

**Procedural History**

The operative complaint named as a defendant, *inter alia*, the Unites States Marshal Supervisor (hereinafter the "Marshal" or "Federal Defendant"). The Marshal filed a motion to dismiss/summary judgment, ECF No. 61, and a brief in support, with attached evidentiary materials. ECF No. 63. The Court ordered that the Motion would be treated as one seeking summary judgment and ordered that the Plaintiff respond accordingly by March 18, 2010. ECF No. 66. On February 18, 2010, the same date as the order directing a response was filed, Plaintiff

---

[3] At the outset, the Court notes that Plaintiff invokes 42 U.S.C. § 1983 as the jurisdictional basis for this suit. ECF No. 15, at 1, ¶ 1. The trouble with this assertion is that Plaintiff is a federal prisoner, technically in the custody of the U.S. Marshal who contracts with the ACJ to house federal prisoners. Thus, an argument could be made that an action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), is more appropriate given that the ACJ defendants are agents for the U.S. Marshal and, thus, are acting under color of federal, not state law. At this stage of the proceedings, and for the purposes of deciding the instant summary judgment motion by the Marshal, we will simply assume that this is properly a Bivens action at least with respect to the Marshal defendant, who clearly acts under color of federal, not State, law. See, e.g., Pettiford v. City of Greensboro, 556 F.Supp.2d 512, 536 (M.D.N.C. 2008); Jarno v. Lewis, 256 F.Supp.2d 499 (E.D.Va. 2003).

filed a motion to postpone, suspend or stay the proceedings. ECF No. 67. In that motion, Plaintiff again complained of having no access to any legal material, having no paper, no envelopes, and no access to a law library and he requested that all deadlines be suspended until July 1, 2010. Id. As noted in a response filed by the Medical Defendants, in spite of the self proclaimed alleged deficiencies, Plaintiff has "managed to actively pepper this court with pleadings, in ongoing criminal matters. On February 17, 2010, Plaintiff moved for the appointment of a forensic accountant (Case 2:07-cr-0290, Doc. 80). This is a 5 page, single-spaced document filed with this court on the docket in 2 of his ongoing criminal matters. 4. Plaintiff has filed a Motion for Pro Se Representation and Related Matters in 2:09-CR-0043 (Document 55) on January 27, 2010. This is a seven-page single spaced document. 5. The filing of these documents belies the truthfulness of the allegations contained in Document 67." ECF No. 68 at 1 to 2, ¶¶ 3 - 5.

Yet again demonstrating his ability to find postage, paper and envelopes (contrary to his verbal representations), Plaintiff filed a response to the facts that the Medical Defendants pointed out. Plaintiff filed on March 2, 2010, what he called an "Omnibus Motion to Resolve Plaintiff's Prohibitive Conditions." ECF No. 71. In that filing, Plaintiff conceded that an indigent inmate gets six # 10 envelopes per 30 days but this only occurs roughly 10 times a year and that he is forced to choose between using these for legal purposes or personal correspondence, which he contends unfairly forces a choice upon him, which we note is not unlike the choice forced upon all who do not possess unlimited resources. ECF No. 71 at 1 to 2, ¶¶ 3 - 4. Plaintiff further complained that only about 6 pages of paper can fit in these # 10

envelopes, thereby limiting the amount he can send out in one mailing. Id., at ¶ 5.[4] Plaintiff concedes that the commissary has larger envelopes for sale but that he, being indigent, cannot buy any. Id., at ¶ 6. Plaintiff then goes on to complain that the law library is inadequate as a general matter but, moreover, given that he is in the Disciplinary Housing Unit ("DHU") there is no law library access at all therein. Plaintiff does not specify when he was placed in the DHU but it appears that notwithstanding his placement in the DHU, he has been more than able to compose and file many pleadings and motions, both in this case and in his pending criminal cases. Plaintiff also complains of lack of carbon paper. But he does not explain why, given that he concedes he has much time on his hands, he cannot hand copy that which he wished to have carbon copied. Plaintiff contends that he can easily "whip together a simple motion" but that he cannot possibly respond to a complex summary judgment motion given his current circumstances in the DHU. Id., at ¶¶ 15 to 17.

However, even in his "Omnibus" motion, it appears that Plaintiff was still not being entirely forthright with the Court. For example, on March 19, 2010, a mere 17 days after he filed his "Omnibus" motion in this case, complaining of his lack of paper, postage and legal research, Plaintiff filed his six page "Position and Memorandum of Law with Respect to Pecuniary Loss Pursuant to U.S.S.G. 2.B1.1" in his criminal case at No. 06-216. In that pleading, Plaintiff asserted that "[a]lthough I am merely a pro se defendant and untrained in the technical aspects and formalities of the law, I have put a great deal of effort into understanding this small nitch

---

[4] It appears that Plaintiff's estimate of the number of pages that can fit into a one # 10 envelope varies, perhaps with the number of pages any given filing by him takes. While he estimates in ECF No. 71, at 2, ¶ 5 that a # 10 envelope can only fit six pages, in ECF No. 89, at 1, ¶ 3, Plaintiff asserts that "one single # 10 envelope can only hold ten pages."

[sic] of the law. The government needs to respond to this issue. 3. With all due respect to the Court, I have a drastically different understanding of how the law applies than that of the Court as was expressed on March 8, 2010." U.S.A. v. Tilley, No. 06-CR-216 (W.D. Pa. ECF No. 386, at 1, ¶¶ 2 - 3). It is apparent from reading this pleading *in toto*, Plaintiff apparently had access to some legal research at least on the sentencing guidelines, enabling him to argue at length and in depth, including arguing about the "statutory definition and application of actual loss." Id., at ¶ 10. Indeed, evidence from Plaintiff himself indicates at least at one point that Judge Conti, who was presiding over three of his pending criminal cases, apparently ordered that Plaintiff's stand-by counsel provide Plaintiff postage but that even then, this was not sufficient to meet his apparently voracious need. See U.S.A. v. Tilley, No. 07-CR-290 (W.D. Pa. ECF No. 69-2 at 14). Needless to say, Plaintiff's actions in his ongoing cases, speak louder and possibly truer than his words. In light of his actions, Plaintiff's complaints ring hollow at best.

Notwithstanding the foregoing, after requesting the Court to stay the case, the Court granted in part and denied in part Plaintiff's request. ECF No. 76. The Court granted Plaintiff an extension of time in which to file his objections to the Report addressing his preliminary injunction motions, but denied the motion in all other respects. Although, as noted above, Plaintiff was able to file an extensive Sentencing Position memorandum in his criminal case, he apparently did not have the same attention or level of commitment to his civil case as the deadline of March 18, 2010, by which to respond to the Marshal's summary judgment motion came and went without any response from Plaintiff.

The Allegheny County Defendants then filed a motion to dismiss, ECF No. 85, and a brief in support. ECF No. 87. The Court ordered Plaintiff to file by May 15, 2010, his response

5

to the Allegheny County Defendants' motion to dismiss.  ECF No. 87.

Plaintiff then filed another "Omnibus" response, with the opening paragraph being "I have no paper, no postage, no copies and no money."  ECF No. 89, at 1, ¶ 1.  In that response, he *inter alia*, responded, albeit belatedly, to the Marshal Supervisor's motion for summary judgment, not with evidence but with brief argument.  ECF No. 89 at 4 to 5, ¶¶ 31 to 39.  Notwithstanding that Plaintiff's response to the Marshal's summary judgment motion was filed out of time, and without leave of court, indeed, Plaintiff did not even seek leave of court to file out of time, the Court will consider his response.

**Legal Standard - Summary Judgment**

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden to show or point out why there is no genuine issue of material fact.  Walters ex rel. Walters v. General Motors Corp., 209 F.Supp.2d 481, 484 (W.D. Pa. 2002).  Once that burden has been met, the burden shifts to the non-moving party who must set forth "specific facts showing that there is a *genuine issue for trial . . .*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita, 475 U.S. at 587.  The inquiry

involves determining whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50.

Moreover, it is not enough for the nonmovant to show that there is some dispute as to some facts. Rather, the "substantive law governing the dispute will determine which facts are material, and only disputes over those facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004)(internal quotations omitted).

In reviewing the summary judgment evidence, the Court has no duty to search the record for triable issues; rather, it need rely only on those portions of the evidentiary record to which the nonmoving party directs its attention. Guarino v. Brookfield Township Trustees, 980 F.2d 399, 404 (6th Cir. 1992); Northwestern National Insurance Company v. Baltes, 15 F.3d 660, 662-63 (7th Cir. 1994)("judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits-not only because the rules of procedure place the burden on the litigants, but also because their time is scarce.").

In short, the summary judgment motion is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001)(summary judgment is the "moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.").

7

**Discussion**

Plaintiff's complaints against the Marshal may be summarized as follows:

Plaintiff alleges that in 2007, while he was preparing for trial in U.S. District Court, he slipped and fell in the shower which caused him to have blood in his urine. Amended Complaint, ECF No. 15 at ¶¶ 44-47. Plaintiff claims that he complained of "cramp-like" pain, but that he had no opportunity to see a doctor because the U.S. Marshals Service transported him to the Federal Courthouse everyday before the ACJ's medical facility was open for visits. Id. ¶¶ 48-51. Plaintiff alleges further that he is a "pre-diabetic," and therefore, he brought hard candy and red Kool-Aid with him to the Federal Courthouse during his criminal trial, which he claims the U.S. Marshals permitted. Id. ¶¶ 53- 56. Plaintiff alleges further that during the course of his criminal trial and as a result of his medical complaints to the District Judge, his urine was examined by the Courthouse nurse, but the "blood color had significantly dimminished [sic]." Id. ¶ 64. He alleges further that the Federal Defendant and other unnamed U.S. Marshal Service personnel erroneously concluded that Plaintiff was faking an injury and planning to add the drink mix to his urine to mimic the color of blood. Id. ¶¶ 67-68. As a result of the Federal Defendant's allegedly erroneous conclusion, Plaintiff claims that he was forced to continue with his criminal trial in pain. Id. at ¶ 69. Plaintiff alleges further that, upon his return to the ACJ, he was strip searched and placed in the DHU, with no linens, cosmetics, legal materials, or access to a telephone. Id. ¶¶ 73-77. In addition, Plaintiff claims that he was prevented from having unfettered access to his lawyer, he was not allowed to shower or bathe, and that these deprivations continued throughout the time he was housed in the DHU. Id. ¶¶ 78-88. Plaintiff contends further that, based on what he was told during a Program Review Committee meeting at

8

the ACJ, he was housed in the DHU because that is where the U.S. Marshals Service "want[ed] to keep" him. Id. ¶¶ 91-92. Further, Plaintiff contends that, following the conclusion of his 2007 trial, he was placed in a maximum security pod, presumably because the U.S. Marshal determined him to be an "escape risk." Id. ¶¶ 38, 98.

Based on the foregoing, Plaintiff asserts three claims against the Marshal. See id. ¶¶ 171-77 (Count 1); ¶¶ 178-84 (Count 2); ¶¶ 185-93 (Count 3). In Count 1, Plaintiff alleges that he was denied medical care in violation of the Eighth and Fourteenth Amendments of the United States Constitution. Id. ¶¶ 44-47, 171-72.

In Count 2, Plaintiff alleges that he was subjected to unnecessary "search and seizure, deprivation of liberty, without due process, deprivation of freedom of speech, or in the alternative, 'cruel and unusual punishment,'" in violation of the First, Fourth, Eighth and Fourteenth Amendments of the United States Constitution and that these deprivations were all apparently in connection with his placement in the DHU. Id. ¶ 178. Plaintiff offers no factual specifics related to this claim. Rather, he merely refers to the events described in paragraphs 33 to 96 of his Amended Complaint as providing the basis for these alleged deprivations. See id.

In Count 3, Plaintiff alleges that the Federal Defendant "acted in concert with" the ACJ and Defendant Butler to "punish" him without due process by taking his legal materials and prohibiting him from using the telephone, all in violation of the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution. Id. ¶¶ 186, 188-89.

The Marshal moves for summary judgment on the basis of the following: (1) there is no evidence of the Marshal's personal involvement in the alleged constitutional violations, ECF No. 63 at 9 to 11; (2) the Marshal did not violate any of Plaintiff's constitutional rights because (a)

Plaintiff had no constitutional right to be free from being "falsely" accused by the Marshal of being an escape risk by attempting to fake an injury; (b) Plaintiff had no right to a particular classification, i.e., he had no constitutional right to not be classified as an escape risk, even if that resulted in him being housed in the DHU and/or, alternatively, being housed in the DHU for 67 days simply does not amount to a deprivation of a liberty interest;[5] (3) the Marshal's taking of Plaintiff to the Courthouse from the ACJ in the morning and taking of Plaintiff to the Courthouse nurse to be examined were all done pursuant to facially valid court orders and, hence, the Marshal is entitled to quasi judicial immunity; and (4) the Marshal is entitled to qualified good faith immunity.[6] We find that the Marshal's summary judgment motion was sufficient to carry his initial burden so as to shift the burden to Plaintiff to come forward with whatever evidence Plaintiff had to carry his burden at trial.

The rule is that a defendant in a Bivens action must have been personally involved in the constitutional violation, liability cannot be premised on *respondeat superior*. See, e.g., Huberty v. U.S. Ambassador to Costa Rica, 316 Fed.Appx. 120, 122 (3d Cir. 2008)("Huberty's complaint does not allege that either defendant was personally involved with the alleged wrongs and

---

[5] To the extent that the Marshal relies upon Sandin v. Conner, 515 U.S. 472 (1995) to argue that Plaintiff's placement in the DHU for a mere 67 days does not amount to a liberty interest, ECF No. 63 at 15 to 17, we are not sure that Sandin is the applicable legal standard, given that Plaintiff was apparently a pre-trial detainee at the time of his placement in the DHU. See, e.g., Fuentes v. Wagner, 206 F.3d 335, 341-42 n. 9 (3d Cir. 2000) (Sandin, which "concern[ed] punishment of a sentenced prisoner," was inapplicable to convicted but not yet sentenced detainee); Benjamin v. Fraser, 264 F.3d 175, 189 (2d Cir. 2001)(collecting cases). Thus, we do not rely on the Marshal's reasoning with respect to whether Plaintiff was deprived of a liberty interest or not in granting summary judgment to the Marshal.

[6] While the Marshal argues entitlement to summary judgment for any Federal Tort Claims Act claims, ECF No. 63, at 21 to 29, Plaintiff affirmatively states he has not raised any such claim. ECF No. 89 at 4, ¶ 32.

10

respondeat superior liability is not an available basis for relief under *Bivens*. *See Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000) (collecting cases holding that respondeat superior is not a viable theory of Bivens liability)"). Moreover, it is the plaintiff's burden to adduce evidence of the defendant's personal involvement. King v. Nation, 917 F.2d 1304, (Table, Text in WESTLAW), 1990 WL 170424, at *3 (6th Cir. 1990)("Personal involvement in the alleged abuse must be shown in order to establish a prima facie case of 'deliberate indifference' under section 1983. Plaintiff has offered no evidence of such personal involvement and, thus, has failed to meet his burden under Fed.R.Civ.P. 56.")(citation omitted).

In response to the no-personal-involvement defense, Plaintiff presents arguments that because the ACJ individuals told him that the Marshal told them to place Plaintiff in the DHU, this was sufficient personal involvement on the part of the Marshal. ECF No. 89 at 4, ¶ 31. However, this is simply insufficient to raise a genuine issue of material fact. Plaintiff's statement as to what a third person said out of court offered to prove the truth of the matter asserted is classic hearsay, incapable of creating a genuine issue of material fact for summary judgment purposes. See, e.g., Beyah v. Coughlin, 789 F.2d 986, 990 (2d Cir. 1986)("Rule 56(e) provides that '[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' This requirement means that '[h]earsay testimony ... that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e)] affidavit.' 6 Moore's Federal Practice ¶ 56.22[1], at 56-1312 to 56-1316 (2d ed. 1985) (footnote omitted)"); Thomas v. International Business Machines, 48 F.3d 478, 485 (10th Cir. 1995)("To be sure, the nonmoving party need not produce evidence 'in a *form* that

11

would be admissible at trial,' but the content or substance of the evidence must be admissible. For example, hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.' . . . (citations omitted)."). Accordingly, summary judgment should be granted to the Marshal on the basis of lack of personal involvement as to all of Plaintiff's claims against the Marshal, given that Plaintiff failed to adduce evidence of any such personal involvement.

The Marshal is also entitled to summary judgment as to all of Plaintiff's claims based upon quasi-judicial immunity. The doctrine of quasi-judicial immunity provides that "an official is entitled to absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of 'enforcing or executing a court order is intrinsically associated with a judicial proceeding.' " Cooper v. Parrish, 203 F.3d 937, 948 (6th Cir. 2000) (quoting Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994)). See also Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980)("Judicial immunity extends as well to those who carry out the orders of judges."). Cf. Waits v. McGowan, 516 F.2d 203, 206-07 (3d Cir. 1975) (person directly involved in the judicial process may be covered by judicial immunity where he is performing a ministerial function at judge's direction).

In response to the summary judgment motion, Plaintiff points to alleged evidence that days after his alleged fall at ACJ and blood in his urine, and after he was examined by the Courthouse nurse, he was "tested by a real clinician and found to have 'blood in my urine.'" ECF No. 89 at 4. Plaintiff contends that the Marshal was somehow deliberately indifferent to his serious medical need. In addition, Plaintiff complains that the Marshal took Plaintiff from the

12

ACJ prior to sick call at ACJ which, in effect, prevented Plaintiff from receiving treatment. We note that apparently such taking of Plaintiff from the ACJ prior to sick call being held did not prevent Plaintiff from all treatment given that Plaintiff himself concedes that at some point in time he was indeed seen and tested by a "real clinician." Thus, at most, the Marshal's taking of Plaintiff prior to sick call being conducted delayed but did not deny Plaintiff treatment.

The general rule is that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in . . . harm." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Marks v. Kansas, 75 Fed.Appx. 712, 715 (10th Cir. 2003)("[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."). This is the rule in this Circuit. See, e.g., Brooks v. Kyler, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (the prisoner-plaintiff "presented no evidence of any harm resulting from a delay in medical treatment."). Instantly, Plaintiff has failed to allege any additional harm caused by the delay, let alone adduce any evidence of additional harm caused by the delay attributable to the Marshal. Hence, the Marshal is entitled to summary judgment as to this claim for this reason alone.

However, even if Plaintiff had alleged such additional harm or adduced any evidence thereof, the only evidence of delay in Plaintiff's treatment is delay due to the Marshal taking Plaintiff from the ACJ to the U.S. Courthouse for trial early in the morning (i.e., prior to sick call being held at ACJ) pursuant to a Court order directing that the Marshal transport Plaintiff for his criminal trial. Similarly, the only evidence that the Marshal was "deliberately indifferent" is that the Marshal took Plaintiff to see the Courthouse nurse, (Plaintiff's apparent complaint being that the Courthouse nurse is not an appropriate or "real clinician"), but again the complaint

13

establishes that the Marshal did so pursuant to a court order from Judge Ambrose. Such "evidence" of the Marshal's actions does nothing to take the Marshal outside of the protection of quasi-judicial immunity. According to the complaint, the Marshal took Plaintiff to see the Courthouse nurse for an evaluation at the order of Judge Ambrose and thus because the Marshal did so pursuant to a court directive, he would be entitled to quasi-judicial immunity. Thus, the Marshal is entitled to summary judgment for any claims based on the acts of the Marshal in transporting Plaintiff from the ACJ early in the morning prior to sick call at the ACJ and based on the acts of the Marshal in taking Plaintiff to see the Courthouse nurse as these acts are subject to quasi-judicial immunity.

As an alternative basis to the quasi-judicial immunity defense to Plaintiff's deliberate indifference claim against the Marshal, we find the complaint fails to state a claim of deliberate indifference because, given the conclusion of the Courthouse nurse, i.e., Plaintiff did not have blood in his urine, the Marshal was entitled to rely on the Courthouse nurse's evaluation, even if the nurse was mistaken and, so, no reasonable jury could conclude that the Marshal was deliberately indifferent to Plaintiff's medical needs. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)("The only allegation against either of these two [prison official] defendants was that they failed to respond to letters Durmer sent to them explaining his predicament. Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.") (footnoted omitted); Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D. Pa. 2001) ("Prison authorities who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical

complaints of a prisoner who was already being treated by the prison doctor. Similarly, health care administrators cannot be found deliberately indifferent when an inmate is receiving care from a doctor.")(internal citations and quotations omitted). This rule makes sense because a non-medical layperson cannot be deliberately indifferent to a prisoner's medical needs when he knows that the prisoner is being seen by and evaluated by medical personnel, notwithstanding the prisoner's complaints about the medical personnel's conclusions because a non-medical layperson has no expertise whereby to judge the adequacy *vel non* of a medical personnel's professional judgment. Thus, the Marshal's reliance on the evaluation of the Courthouse nurse to determine that Plaintiff did not have blood in his urine and, inferentially, was not in need of further medical treatment, essentially checkmates Plaintiff from establishing the subjective prong required for deliberate indifference. In other words, following the advice of the Courthouse nurse with respect to Plaintiff's medical condition simply does not constitute deliberate indifference.

Nor does Plaintiff's "evidence" from the "real clinician" that Plaintiff did have blood in his urine establish anything other than that the Marshal may have been mistaken in evaluating Plaintiff as attempting to escape by faking a fall and an alleged injury and, hence, determining that Plaintiff may be an escape risk and communicating that to the ACJ. That the Marshal may have been mistaken in such a judgment simply does not violate any of Plaintiff's constitutional rights. Bishop v. Wood, 426 U.S. 341, 350 (1976)("The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect . . . decisions"), *overruling on other grounds as recognized in*, Whims v. Harbaugh, 139 F.3d 897 (4th Cir. 1998) (Table, Text in Westlaw); Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (applying rule of Bishop v. Wood in a

15

prisoner case); Palmigiano v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974)("There is no federally-protected right to a particular classification nor even to an error-free decision by the state authorities. 'The Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state.'")(quoting Snowden v. Hughes, 321 U.S. 1, 15 (1944) (Frankfurter, J., concurring)); Tansy v. Mondragon, 52 F.3d 338 (Table), 1995 WL 216926, at *5 (10th Cir. 1995)("Even assuming that some of the allegations against Mr. Tansy were inaccurate, this does not establish a factual dispute as to whether he was deprived of substantive due process."). That the Marshal committed a factual error in the course of determining whether Plaintiff is a security threat and, therefore, worthy of placement in the DHU (assuming that the Marshal did do so erroneously), simply does not violate any of Plaintiff's constitutional rights. That this is the case should not be surprising. If it does not offend the constitution that an innocent man is convicted of a crime and made to suffer imprisonment, and the Supreme Court has determined that it does not so offend,[7] then *a fortiori*, that a prisoner, or even a pre-trial detainee, is "mistakenly" classified as a security threat and made to suffer a greater loss of privileges in comparison to those in the general population does not, merely because the determination is mistaken, violate the constitution. Hence, to the extent that Plaintiff complains of the Marshal's causing Plaintiff to be placed in the DHU, based on the Marshal's allegedly erroneous evaluation that Plaintiff was an escape risk, such simply does not violate any of Plaintiff's constitutional rights and, thus, the Marshal is entitled to summary judgment.

---

[7] See Herrera v. Collins, 506 U.S. 390, 400 (1993)("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief."). See also id. at 404 ("a claim of 'actual innocence' is not itself a constitutional claim").

Alternatively, the Marshal is entitled to qualified immunity. A "government official is entitled to qualified immunity if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000). In "order to survive summary judgment on grounds of qualified immunity, a plaintiff must (1) allege violation of a valid legal right and (2) demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Abdullahi v. City of Madison, 423 F.3d 763, 775 (7th Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).[8]

Although in the preceding analysis the Court determined that the Marshal did not violate Plaintiff's constitutional rights (or more properly, there is no material factual dispute over this), even if, for the sake of argument, the Court assumed such actions or inactions on the part of the Marshal did violate Plaintiff's constitutional rights, the Marshal would still be entitled to summary judgment on the basis of qualified immunity.

Because it would not have been clear to a reasonable officer in the shoes of the Marshal that his actions violated Plaintiff's constitutional rights, in light of the Marshal's attempt to follow Court orders, as well as the Marshal's reliance on the Courthouse nurse's evaluation of Plaintiff, as well as the Marshal's allegedly erroneous assessment that Plaintiff was faking the injury in an attempt to escape, the U.S. Marshal defendant is entitled to summary judgment based on qualified immunity.

---

[8] Recently, the Supreme Court receded from the qualified immunity rule in Saucier v. Katz, that required the courts to first determine whether a constitutional violation occurred and only then proceed to determine if it would have been clear to a reasonable person that their actions violated clearly established law. Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808 (2009).

Hence, for any or all of the foregoing reasons, because Plaintiff has failed to demonstrate a genuine issue of material fact, the Marshal is entitled to summary judgment. An appropriate Order follows.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


Dated: September 8, 2010


cc:    The Honorable Amy Reynolds Hay
       Chief United States Magistrate Judge

       Lacy E. Tilley, Jr.
       #142623
       Allegheny County Jail
       950 Second Avenue
       Pittsburgh, PA 15219

       All counsel of record via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LACY E. TILLEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.09-299 |
| | ) | Judge Arthur J. Schwab/ |
| ALLEGHENY COUNTY JAIL; | ) | Chief Magistrate Judge Amy Reynolds Hay |
| RAMON RUSTIN, Warden; | ) | |
| U.S. MARSHALL SUPERVISOR; | ) | |
| C.0. BUTLER; CAPTAIN LEIGHT; | ) | |
| CAPTAIN MAUST; CAPTAIN | ) | |
| STANTON; SERGEANT COULTER; | ) | |
| KENGERSKI; C.O. KOVAC; | ) | |
| ALLEGHENY COUNTY HEALTH | ) | |
| SERVICES; DANA PHILLIPS; DR. | ) | |
| MEBANE; NURSE NANCY, | ) | |
| | ) | |
| Defendants. | ) | Re: ECF No. 61 |

## **ORDER**

AND NOW, this 8th of September, 2010, for the reasons set forth in the accompanying Memorandum Opinion, IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 61) filed by the U.S. Marshal is GRANTED with respect to all claims.

                                               s/ Arthur J. Schwab
                                               Arthur J. Schwab
                                               United States District Judge

cc:    The Honorable Amy Reynolds Hay
       Chief United States Magistrate Judge

       Lacy E. Tilley, Jr.
       #142623
       Allegheny County Jail
       950 Second Avenue
       Pittsburgh, PA 15219

       All counsel of record via CM-ECF