IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LACY E. TILLEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.09-299 |
| | ) | Judge Arthur J. Schwab/ |
| ALLEGHENY COUNTY JAIL; | ) | Chief Magistrate Judge Amy Reynolds Hay |
| RAMON RUSTIN, Warden; | ) | |
| U.S. MARSHALL SUPERVISOR; | ) | |
| C.0. BUTLER; CAPTAIN LEIGHT; | ) | |
| CAPTAIN MAUST; CAPTAIN | ) | |
| STANTON; SERGEANT COULTER; | ) | |
| KENGERSKI; C.O. KOVAC; | ) | |
| ALLEGHENY COUNTY HEALTH | ) | |
| SERVICES; DANA PHILLIPS; DR. | ) | |
| MEBANE; NURSE NANCY, | ) | |
| | ) | |
| Defendants. | ) | Re ECF Nos. 85 |

## **MEMORANDUM OPINION AND ORDER**

Lacy E. Tilley, ("Plaintiff") is a federal prisoner who was sentenced in one of his federal

criminal trials on July 15, 2008.[1]  He is also awaiting sentencing on other federal criminal

charges in two other cases before Judge Conti.[2]  Plaintiff is currently being housed in the

Allegheny County Jail as a federal prisoner.  He has been there since August 2007.  ECF No. 5 at

4, ¶ 19.

In March 2009, Plaintiff filed his original complaint, in which, Plaintiff named the U.S.

Marshal Supervisor, and 11 employees of the Allegheny County Jail ("ACJ") as defendants.

---

[1]  U.S.A. v. Lacy Tilley, No. 2:06-CR-222 (Dkt. [124] judgment of sentence entered
requiring Plaintiff to serve 87 months of incarceration for possession of a firearms by a convicted
felon).

[2]  The two cases are as follows: 1) U.S.A. v. Tilley, No. 2:07-CR-290; and 2) U.S.A. v.
Tilley, No. 2:09-CR-43.

ECF No. 5. In that original complaint, Plaintiff complained about the conditions of his

confinement in the ACJ. Subsequently, Plaintiff filed, as of right, an amended complaint, ECF

No. 15, wherein he complained of many of the same conditions of confinement as he had in the

original complaint but added four defendants: 1) Allegheny County Health Services ("ACHS");

2) Dana Philips, director of ACHS; 3) Dr. Mebane, a psychiatrist who works with ACHS; and 4)

Nurse Nancy (collectively "the Medical Defendants"), adding a claim of medical deliberate

indifference against these four new defendants.[3] In the amended complaint, Plaintiff dropped

three defendants who worked at the ACJ, namely, Lance Bohn, Barry Emerick, and Captain Pofi

and he added one other defendant who worked at ACJ, namely, Captain Demore.

### PROCEDURAL HISTORY

The operative complaint named as defendants, *inter alia*, the Allegheny County Jail;

Ramon Rustin, the warden of the ACJ; Captains Leight, Demore, Stanton and Maust; Sergeants

Coulter and Kengerski; and Corrections Officers ("CO") Butler and Kovac, (collectively, "the

ACJ Defendants").[4] The ACJ Defendants filed a motion to dismiss, ECF No. 85, and a brief in

---

[3] At the outset, the Court notes that Plaintiff invokes 42 U.S.C. § 1983 as the jurisdictional basis for this suit. ECF No. 5 at 1, ¶ 1; ECF No. 15 at 1, ¶ 1. The trouble with this assertion is that Plaintiff is a federal prisoner, technically in the custody of the Federal Marshals which contracts with the ACJ to house federal prisoners. Thus, an argument could be made that a Bivens action is more appropriate given that the ACJ defendants are agents for the U.S. Marshals and thus are acting under color of federal, not state law. At this stage of the proceedings, and for the purposes of deciding the Motion to Dismiss, it may not be necessary to resolve this thorny question and we will not do so but will assume Section 1983 is the proper basis, at least as to the ACJ Defendants. See, e.g., Pettiford v. City of Greensboro, 556 F.Supp.2d 512, 536 (M.D.N.C. 2008); Jarno v. Lewis, 256 F.Supp.2d 499 (E.D.Va. 2003).

[4] This case has been the subject of prior proceedings, including denying Plaintiff's motion for preliminary injunction and granting the United States Marshal's summary judgment motion. Familiarity with those proceedings is presumed.

support.  ECF No. 86.  Plaintiff was ordered to file a response to the ACJ Defendants' motion to dismiss.  ECF No. 87.  Plaintiff filed his response.  ECF No. 89 at 3 to 4.

**LEGAL STANDARDS**

As the United States Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Under this standard, the court must, as a general rule, accept as true all factual allegations of the Complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  Nevertheless, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), *amended by,* 275 F.3d 1187 (9th Cir. 2001). Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Furthermore, it is not proper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged."  Assoc.'d Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

Recently, the Supreme Court refined its standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937 (May 18, 2009). Expanding on its decision in <u>Twombly</u>, the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice…. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-50.   To meet Fed.R.Civ. P. No. 8(a)(2)'s notice pleading requirements, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests,'" <u>Twombly</u>, 550 U.S. at 555 (*quoting* <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  <u>See also</u> 5C Wright & Miller, <u>Federal Practice and Procedure</u> § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and items appearing in the record of the case when adjudicating a motion to dismiss under Rule 12(b)(6).  <u>Winer Family Trust v. Queen</u>, 503 F.3d 319, 328 -29 (3d Cir. 2007); <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38

F.3d 1380, 1385 n.2 (3d Cir. 1994)(in adjudicating motions to dismiss, courts may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."). In addition, the Court of Appeals in <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 (3d Cir. 2004), held that a "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the indisputably authentic exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" <u>Twombly</u>, 550 U.S. at 555. Or, put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 570.

In addition, because Plaintiff was, at the time of the filing of this civil action,[5] a prisoner and because he named governmental entities or employees thereof as defendants, the screening provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply herein. In addition, because he was a prisoner, granted leave to proceed in forma pauperis to prosecute this suit, the screening provisions of 28 U.S.C. § 1915(e) also apply. Lastly, because

---

[5]    <u>See</u>, <u>e.g.</u>, <u>In re Smith</u>, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day he files a civil action, the PLRA applies."); <u>Colby v. Sarpy County</u>, No. 4:01CV3130, 2006 WL 519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e., whether he is incarcerated when the complaint is filed, determines whether the PLRA applies to a case.").

he was a prisoner who filed a civil rights action, complaining of prison conditions, the screening

provisions of 42 U.S.C. § 1997e apply. The court's obligation to dismiss a complaint under the

PLRA screening provisions for complaints that fail to state a claim is not excused even after

defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6

(9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a

defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon

such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S.,

CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), *aff'd*, 264 F.App'x 183 (3d

Cir. 2008).

**DISCUSSION**

The ACJ Defendants move to dismiss the complaint based upon the lack of personal

involvement of Defendants Rustin, DeMore, Stanton, Leight and Coulter. ECF No. 86 at 6 to 7.

They essentially argue that Plaintiff has failed to plead personal involvement of these five

defendants and that Plaintiff attempts to render them liable solely on the basis of *respondeat*

*superior*.

In a civil rights action, a plaintiff must show that the defendants "have personal

involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

"Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion

that the person who benefits by the acts of the servant must pay for wrongs committed by the

servant; the one held liable as master need not be at fault in any way." McClelland v. Facteau,

610 F.2d 693, 695 (10th Cir. 1979). However, the rule is that in Section 1983 cases, liability

based upon respondeat superior is not available. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d

Cir. 1988)("liability [in a civil rights action] cannot be predicated solely on the operation of respondeat superior.").[6]

With respect to Defendant Warden Rustin, the ACJ Defendants point out that "Plaintiff fails to even mention Defendant Warden Rustin" in any of the ten specific "counts" that Plaintiff brings in the operative complaint. ECF No. 86 at 7. The Court agrees. Other than listing Warden Rustin in the caption and in the introductory list of Defendants, ECF No. 15 at 3, ¶ 7, Plaintiff fails to mention Defendant Rustin again in the complaint by name. Hence, the complaint fails to reveal any personal involvement by Defendant Rustin.

In his response, Plaintiff does say that "Rustin, Demore, Stanton, Leight and Culter [sic] were all informed of my problem and all acted affirmatively to support the continuation of it." ECF No. 89 at 4, ¶ 26. The problem is that this allegation is not contained in the complaint. Grayson v. Mayview State Hospital, 293 F.3d 103, 109 n.9 (3d Cir. 2002)("For the sake of clarity, a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a complaint through any document short of an amended pleading."). Accord Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Moreover, even if we permitted Plaintiff leave to amend his complaint yet again in order to include this new allegation, the simple allegation in Plaintiff's response is inadequate under

---

[6] For present purposes it does not matter whether the current civil rights action is characterized as a Section 1983 action or a Bivens action against the ACJ defendants, for, in neither case does *respondeat superior* liability apply. Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Twombly and Iqbal to state a claim against Rustin and constitutes nothing more than a mere conclusion, which is insufficient under Twombly. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"). Plaintiff fails to say how they were made aware of his "problem" or when they were made aware of the problem or to even specify what "the problem," out of his many problems, was. In performing our "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" we find that even considering this new allegation, contained in Plaintiff's response, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, [and, so,] the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950. Hence, the complaint must be dismissed as against Defendant Rustin.

Similarly, Defendant Leight is mentioned only four times by name in the operative complaint. ECF No. 15 at ¶¶ 125; 210; 228 and 233.[7] While Plaintiff at least explicitly mentions Defendant Leight in the body of the complaint, his allegations against Defendant Leight are similarly conclusory and fail to state a claim. The first allegation is the Defendants Leight

---

[7] Plaintiff alleged the following in regards to Leight: "Plaintiff was then interviewed by Leight and Demore, and the interview took the direction of inquiry into matters involving Kovac and the introduction of drugs into ACJ[,]" ECF No. 15 at 25, ¶ 125; "Defendants worked in collaboration to exact the desparate [sic] treatment knowingly, or to the extent of allowing other[s] to engage in such conduct, to deprive the Plaintiff of equal protection under the law. Defendants ACJ, Kovac, Leight, Demore, Kengerski, Maust, Stanton and Coulter were all a party to the ordeal at various degrees of fault[,]" id, at ¶ 210; and "Defendants listed at count six of this complaint are hereto incorporated in this count[,]" id., at ¶ 228 (Defendant Leight was listed in Count Six) and at ¶ 233, wherein Plaintiff simply says that he seeks $1,500 in punitive damages from Defendant Leight.

and Demore interviewed Plaintiff. There is no constitutional violation in interviewing a prisoner. The second allegation is that Defendant Leight and others "worked in collaboration" to either themselves cause Plaintiff to be subjected to disparate treatment or allow others to do so. Reading this allegation liberally, given Plaintiff's pro se status, we find this allegation of "working in collaboration" to essentially constitute an allegation that the Defendants all conspired together to either subject Plaintiff to disparate treatment or to allow others to do so. However, as the Court of Appeals has explained "[t]he allegations [of conspiracy] must be sufficient to 'describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy.'" Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989). Nor does this requirement that allegations of conspiracy be more than conclusory run afoul of the generous pleading standard under Fed.R.Civ.P. 8(a) as construed in Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). See, e.g., Loftus v. SEPTA, 843 F.Supp. 981, 988 (E.D. Pa. 1994) ("Requiring that a complaint alleging conspiracy flesh out in some detail the nature of the scheme does not run afoul of the admonition in *Leatherman* .... Rather, in the context of a conspiracy, the 'short and plain statement' provision of Rule 8 is satisfied only if the defendant is provided with the degree of particularity that animates the fair notice requirement of the rule."). Nor does the last allegation against Defendant Leight satisfy Twombly and Iqbal. Accordingly, Defendant Leight should be dismissed as a party defendant.

The same may be said of Defendant Captain Demore. Plaintiff mentions Captain Demore specifically four times in the body of the complaint. See, e.g., ECF No. 15 at ¶¶ 125; 210; 228 and 233. We have quoted in full paragraphs 125, 210 and 228 *supra*. As for paragraph 233, all

Plaintiff does is say that he seeks $2,500 in punitive damages from Defendant Demore. These allegations fail to state a claim for the same reasons that these same allegations failed to state a claim against Defendant Leight. Accordingly, Defendant Demore should be dismissed as a party defendant.

The same holds true for Defendant Stanton. Plaintiff mentions Stanton a total of six times in the body of the complaint. <u>See</u> ECF No. 15 at ¶¶ 130, 133, 140, 210, 228 and 233. An examination of those paragraphs reveals that the allegations are insufficient under <u>Twombly</u> and <u>Iqbal</u> and should be dismissed for failure to state a claim upon which relief can be granted. Accordingly, Defendant Stanton should be dismissed as a party defendant.

Next, the Defendants seek to have ACJ dismissed as a party defendant.

Plaintiff has named the ACJ as a party defendant and attempts to hold the ACJ liable for allegedly violating his constitutional rights. However, ACJ essentially argues that it does not possess the capacity to be sued. "Capacity" refers to party's ability to sue and be sued in federal court. <u>Koog v. United States</u>, 852 F.Supp. 1376 (W.D.Tex. 1994), *judgment rev'd on other grounds*, 79 F.3d 452 (5th Cir. 1996) (defining "capacity" with respect to federal courts); <u>Ward v. Baldwin Lima Hamilton Corp.</u>, C.A. No. 84-0232, 1985 WL 2830, at *1 (E.D.Pa., Sept. 30, 1985) ("'Capacity' refers to the ability of an entity to be brought into, or to use, the courts of a forum."). This Court agrees that ACJ has no capacity to be sued. <u>Owens v. Scott County Jail</u>, 328 F.3d 1026, 1027 (8th Cir. 2003) ("county jails are not legal entities amenable to suit."); <u>Russell v. Mobile County Sheriff</u>, No. Civ. A. 00-0410-CB-C, 2000 WL 1848470, at *2 (S.D.Ala. Nov.20, 2000) (finding that the Mobile County Jail is not a suable entity); <u>Marsden v. Federal Bureau of Prisons</u>, 856 F.Supp. 832, 836 (S.D.N.Y.1994) (finding that the jail is not an

entity amenable to suit); House v. Cook County Dept. of Corrections, No. 98 C 788, 1998 WL 89095, at *2 (N.D.Ill. Feb.13, 1998) (same); May v. North County Detention Facility, No. C 93-1180 BAC, 1993 WL 300290, at *2 (N.D.Cal. July 21, 1993) (same); see also Castillo v. Cook Co. Mail Room Dept., 990 F.2d 304, 307 (7th Cir.1993) (finding that because the jail is not a suable entity, then it follows that the subdivision, the mail room, is not a suable entity).

Accordingly, ACJ's motion to dismiss should be granted.

However, it is possible that Plaintiff intended to sue Allegheny County by his naming of the Allegheny County Jail. Even if we were to liberally construe Plaintiff's naming of ACJ as a way of naming Allegheny County, the complaint would still be subject to dismissal.

In order to hold liable a municipal entity, such as Allegheny County, the municipal entity itself must have committed a constitutional tort, it cannot be held liable solely on the basis of *respondeat superior*. See, e.g., Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978). Instead, Monell and subsequent cases, have required a plaintiff seeking to impose liability on a municipality to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Id. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403-404 (1997).

The operative complaint is utterly devoid of any allegation of custom or policy. At best, the complaint seeks to hold the County, construed as the ACJ, liable merely on the basis of *respondeat superior*, i.e., the County employed the individual defendants who were allegedly tortfeasors. Such is insufficient as a matter of law. Hence, to the extent that a liberal reading of

the complaint would permit the court to construe the reference to the ACJ as a reference to Allegheny County, the complaint should be dismissed because it fails to state a claim against Allegheny County.

It is true that Plaintiff, in his response alleges that "the Claims against Defendant Allegheny County jail is valid because its policies and procedures are the core of the problems in conjunction with nearly all conduct described in the complaint." ECF No. 89. Of course we have already noted that a prisoner plaintiff cannot effectively amend his complaint by his response to a motion to dismiss. Grayson, 293 F.3d at 109 n.9. Even if however, we considered this new allegation as part of the operative complaint, such would not survive under Twombly and Iqbal. See, e.g., McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009) (a complaint "must identify a custom or policy, and specify what exactly that custom or policy was"); Spiller v. City of Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997) ("[t]he description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory"). Accordingly, ACJ should be dismissed as a party defendant, even if we construed ACJ to be Allegheny County.

Plaintiff alleged violations of his First, Fourth, Eighth and Fourteenth Amendment rights. ECF No. 15 at 33, ¶178.

Plaintiff appears to make a First Amendment access to Courts claim in the operative complaint. ECF No. 15 at 6, ¶¶ 22 to 24; at 7, ¶ 27; at 15 to 16, ¶ 76. Plaintiff complains that he is often times thrown into solitary confinement at the ACJ, which denies him access to the law library, and that the defendants confiscate his legal materials. We note that from July 13, 2006 to February 15, 2007, Plaintiff was represented by Attorney Baginski in Case No. 06-CR-222

(ECF Nos. 13 & 53), and that from February 15, 2007, until at least January 8, 2008, see id., at ECF No. 85, Plaintiff was represented by Attorney Capone, and from February 4, 2008 and continuing to his sentencing and appeal, Plaintiff was represented by Attorney Eyster, Id., at ECF No 141 at 13, ¶79 ("I was not represented pro se at my sentencing or my appealet [sic] review" but was in fact, represented by Attorney Eyster). Thus, throughout all of the proceedings in No. 06-CR-222, Plaintiff was represented by counsel. In light of the fact that he has access to the Courts as a matter of law through his counsel, he cannot make out a First Amendment right of access to courts claim.

The rule is that where an inmate is represented by counsel, his right of access to the courts is satisfied as a matter of law. Lamp v. Iowa, 122 F.3d 1100, 1106 (8th Cir. 1997) ("For, once the State has provided a petitioner with an attorney in postconviction proceedings, it has provided him with the 'capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'") (quoting Lewis v. Casey, 518 U.S. 343, 356 (1996)); Schrier v. Halford, 60 F.3d 1309, 1313-1314 (8th Cir. 1995) (having appointed counsel is one way in which state can shoulder its burden of assuring access to the courts); Annis v. Fayette County Jail, NO. CIV.A. 07-1628, 2008 WL 763735, at *1 (W.D.Pa. Mar 20, 2008); Sanders v. Rockland County Correctional Facility, No. 94 Civ. 3691, 1995 WL 479445 at *2 (S.D.N.Y. Aug. 14, 1995) ("By the appointment of counsel, plaintiff was afforded meaningful access to the courts in his trial."); Williams v. Vaughn, No. 90-5617, 1991 WL 34429 at *4 (E.D.Pa. March 12, 1991) ("Thus, [plaintiff-inmate] Williams was not actually injured by any inability to gain access to the law library since he ultimately obtained representation.").

All of the foregoing is true notwithstanding the fact that Plaintiff chose to proceed pro se

in his two most recent criminal cases at various times because in these cases, he had or could have had counsel appointed for him but he chose to proceed pro se.  See, e.g., United States ex rel. George v. Lane, 718 F.2d 226, 231 (7ᵗʰ Cir. 1983) ("we do not read Bounds to give an option to the prisoner as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that Bounds has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it offered defendant the assistance of counsel which he declined. We so hold."); Love v. Summit County, 776 F.2d 908, 914 (10ᵗʰ Cir. 1985) (state is entitled to choose whether it will meet its obligation to provide access to the courts by providing an adequate law library or by providing legal assistance in the form of an attorney).  Hence, Plaintiff fails to make a denial of access to courts claim as a matter of law.[8] Although Plaintiff has contended that such rules do not apply to him as a pre-trial detainee (at least for a portion of the time he complains about), who is proceeding pro

---

[8] Plaintiff also complains that his legal mail was opened outside of his presence. However, the only piece of legal mail he pointed to in his original complaint was mail from this Court's Clerk Office providing him forms for filing this action.  ECF No. 5 at 19, ¶ 106.  We note that Plaintiff is even less specific in the operative complaint concerning his access to courts claim. Even assuming that Plaintiff intended in the operative complaint to be raising the same First Amendment claim as in the original complaint concerning the opening of his legal mail, Plaintiff clearly suffered no injury from the opening of such mail given that he has filed this suit and vigorously pursued it and hence his claim of denial of access, based upon such opening fails to state a claim.  See, e.g., Jones v. Brown, 461 F.3d 353, 359 n.6 (3d Cir. 2006)(requiring the showing of an actual injury to a real case in order to establish denial of access to courts, in contrast to making a free speech claim, which requires no such injury).  See also Foreman v. Lowe, 261 F.App'x 401, 404 (3d Cir. 2008)("an inmate must allege an actual injury to his ability to litigate a claim to demonstrate that his constitutional right of access to the courts has been violated. An actual injury is shown only where a nonfrivolous, arguable claim is lost.") (citations omitted).

se in a criminal case,[9] he is simply mistaken. The rule does apply to such a pre-trial detainee defending himself. U.S. ex rel. George v. Lane, 718 F.2d 226, 227 (1983) ("We hold that when a defendant (pretrial detainee) is offered the assistance of appointed counsel and refuses the same, no constitutional right exists mandating that the prisoner in the alternative be provided access to a law library should he choose to refuse the services of court-appointed counsel."). Accordingly, Plaintiff's First Amendment claim is dismissed for failure to state a claim upon which relief can be granted.[10]

Next, Plaintiff asserts a Fourth Amendment claim. The "Fourth Amendment protects against unreasonable searches and seizures." United States v. Charles, 29 F.App'x 892, 896 (3d Cir. 2002)(internal quotations omitted). The factual basis of the claim is not readily apparent but it seems Plaintiff is complaining that he was strip searched and impliedly that such searches are an unreasonable search under the Fourth Amendment. See, e.g., ECF No. 15 at 15, ¶¶ 73 - 74. However, Plaintiff provides no facts concerning the strip searches, other than to note that he was stripped searched "by ACJ reception", ECF No. 15 at 15, ¶ 74, and "he was forced into a strip cage on 8E and made to strip again for a more 'extensive' strip search." The complaint does explain however that this strip search was attendant upon his return from his federal criminal trial proceedings during which, the Marshals suspected Plaintiff of planning an attempt to escape by

---

[9] See, e.g., ECF No. 89 at 2, ¶ 11.

[10] We note that to the extent Plaintiff could be successful in claiming that, as a consequence of him choosing to proceed pro se, he had rights to a law library, copying, contact visits with his stand-by counsel, right to make phone calls, etc., and that violations of such "rights" necessarily violated his right to a fair trial in his first conviction, see, e.g., ECF No. 15 at 35 to 36, ¶ 188 -89, Plaintiff's claims would be barred under the doctrine of Heck v. Humphrey, 512 U.S. 477 (1994) until and unless his conviction was overturned.

15

making it seem he had blood in his urine and would need to be transported to somewhere to receive treatment. ECF No. 15 at ¶¶ 48 to 73.  Absent any further factual development, Plaintiff simply fails to state a claim upon which relief can be granted.  See, e.g., Hill v. Bogans, 735 F.2d 391, 393-94  (10th Cir. 1984)("In *Bell v. Wolfish*, 441 U.S. 520, (1979), the Supreme Court held that routine strip searching of pretrial detainees is not a per se violation of the Fourth Amendment. The Court stated that determining the propriety of a strip search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of  the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*. at 559. *Bell* upheld the Metropolitan Correctional Center's practice of subjecting each prisoner to a visual body cavity inspection after every contact visit with a person from outside the institution.").   We cannot conclude that strip searching a detainee adjudged (rightly or wrongly) an escape risk and preparing to place that detainee in segregated housing for closer scrutiny, which is all the complaint alleges, is unreasonable under the Fourth Amendment.  Accordingly, Plaintiff's Fourth Amendment claim should be denied.

Plaintiff may also be making a Fourth Amendment claim concerning the seizure of his property when he was placed in various disciplinary or administrative custody cells. See, e.g., ECF No. 15, at 19 ¶ 96; at 25 ¶ 130 .   However, such seizures of a detainee's property fails to state a claim.

The protections of the Fourth Amendment with respect to searches and seizures of a prisoner's "property" simply do not apply in the prison context.  Doe v. Delie,  257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from

unreasonable searches and seizures is inconsistent with incarceration."); <u>Jones v. Arpaio</u>, 194

F.3d 1317 (Table)(unpublished) (9th Cir. 1999) ("Finally, there is no merit to Valandingham's

contention that jail officials violated his constitutional rights when they failed to return

documents, correspondence, and postage seized following a search of his cell. Valandingham

presented no evidence that the challenged conduct was unconstitutional per se, *see Hudson v.*

*Palmer*, 468 U.S. 517, 527-28 (1984) (holding that Fourth Amendment's prohibition against

unreasonable seizures does not apply in prison) . . . ."). Indeed, what the Court held in <u>Taylor v.</u>

<u>Knapp</u>, 871 F.2d 803 (9th Cir. 1989) is equally applicable here. In <u>Taylor</u>, the prison authorities

were accused of seizing the property of a prisoner and the property of a non profit corporation of

which the prisoner plaintiff was an officer. The plaintiff even alleged that the prison authorities

had converted the property to their own use. The plaintiff alleged that the deprivation of his

property and of the corporation's property violated their fourth amendment rights. The Court in

<u>Taylor</u> rejected this claim, holding that the Fourth Amendment provided no protections against

such deprivations. The <u>Taylor</u> Court held that

> Taylor can make no fourth amendment claim, either on his own behalf or on
> behalf of the nonprofit corporation he wishes to represent.
>
> Lawful incarceration necessarily entails limitations upon many of the
> rights enjoyed by ordinary citizens. *Hudson*, *supra*, 468 U.S. at 524, 104 S.Ct. at
> 3199; *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974). An
> inmate's fourth amendment rights are among the rights subject to curtailment. In
> particular, the fourth amendment does not protect an inmate from the seizure and
> destruction of his property. *Hudson, supra*, 468 U.S. at 528 n. 8, 104 S.Ct. at 2808
> n. 8. Hence it cannot protect an inmate from the conversion of his property. *See id*.
> at 537-40, 104 S.Ct. at 3205- 07 (O'Connor, J, concurring) (because prison
> officials are authorized indefinitely to dispossess inmates of their property, what
> happens to the property while in official custody is not a Fourth Amendment
> concern). This does not mean a prisoner is without redress; it simply means a
> prisoner's form of redress is through the fifth and fourteenth amendments. *Id*. at
> 540, 104 S.Ct. at 3207.

Id. at 806. Likewise here, Plaintiff has no Fourth Amendment protections against the Defendants' allegedly wrongful seizure of any of Plaintiff's property and this is true whether or not Plaintiff was a pre-trial detainee at the times any of the seizures occurred. See, e.g., Tinsley v. Giorla, No. 05-2777, 2008 WL 901697, at 10 n.3 (E.D.Pa., April 1, 2008)(applying foregoing rule from Hudson to pre-trial detainee). Accordingly, Plaintiff fails to state a Fourth Amendment claim upon which relief can be granted.

Plaintiff may also be attempting to make out a Fourteenth or Fifth Amendment procedural due process claim, i.e., the Defendants took my property without affording me procedures required under due process. See, e.g., ECF No. 15 at 25, ¶130 ("Plaintiff complained to Stanton at the same time he reported the loss of books and commissary from his property when he got out of the hole."). However, generally such a claim fails as a matter of law because there are adequate post deprivation remedies. See, e.g., Albright v. Oliver, 510 U.S. 266, 283-84 (1994) (Kennedy, J. concurring in the judgment)("we can assume, arguendo, that some of the interests granted historical protection by the common law of torts . . . are protected by the Due Process Clause. Even so, our precedents make clear that a state actor's random and unauthorized deprivation of that interest cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy."); Hudson v. Palmer, 468 U.S. 517 (1984).

The federal Courts of Pennsylvania have recognized that the availability of a state tort suit in state court provides adequate post deprivation remedies so as to satisfy due process requirements under Hudson v. Palmer. See, e.g., Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies); Rogers v. Mrs. Brown, No. Civ. A. 95-7867, 1996 WL 608473, at *2

(E.D. Pa. Oct. 24, 1996) (tort suit in state court provides adequate post deprivation remedy for deprivation of legal papers); <u>Payton v. Horn</u>, 49 F. Supp.2d 791, 795 (E.D. Pa. 1999)(same), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Ray v. Kertes</u>, 285 F.3d 287 (3d Cir. 2002). The availability to Plaintiff of adequate post deprivation remedies renders him generally unable to state a procedural due process claim and he has alleged nothing to take himself outside of this general rule. Hence, Plaintiff, cannot make a claim under the Fourteenth or Fifth Amendment for a deprivation of property without procedural due process. <u>Payton v. Horn</u>, 49 F. Supp.2d at 795 ("Pennsylvania tort law offers a remedy for prison official's unlawful deprivation of an inmate's property. Therefore, Payton has failed to state a viable claim that his constitutional rights have been violated and cannot maintain a section 1983 action on this claim.")(citations omitted); <u>Reid v. Seville</u>, No. CIV. A. 96-2577, 1996 WL 421901, *3 (E.D.Pa. July 19, 1996)(same). Accordingly, the procedural due process claim must be dismissed.

Plaintiff also appears to be making a Fourteenth or Fifth Amendment procedural due process claim regarding the deprivation of a liberty interest insofar as he was placed in either the Disciplinary Housing Unit or Administrative custody, which he alleges violated his rights.

The facts underlying these claims are not entirely clear. But it appears that sometime in December 2007, during his first criminal trial at No. 2:06-CR-222 (W.D. Pa.), he was placed in the disciplinary housing unit because the U.S. Marshal had determined, albeit erroneously, according to Plaintiff, that Plaintiff was an escape risk and needed heightened security. Apparently, Plaintiff was kept in the Disciplinary Housing Unit for 67 days. ECF No. 15 at 19, ¶ 94. Throughout these 67 days, Plaintiff was a pre-trial detainee.

Based on this fact, Plaintiff asserts that he was punished in violation of his substantive

due process rights. Because Plaintiff was a pre-trial detainee during the 67 days in the DHU, the

relevant inquiry is the substantive due process analysis set forth in <u>Bell v. Wolfish</u>, 441 U.S. 520

(1979)(applying Fifth Amendment due process clause to federal pre trial detainees) and <u>Hubbard</u>

<u>v. Taylor</u>, 399 F.3d 150 (3d Cir. 2005)(applying <u>Bell</u> standard under Fourteenth Amendment due

process clause to state pre-trial detainees).[11]

> Under <u>Bell</u>, the
>
> the proper inquiry is whether those [challenged] conditions [of confinement]
> amount to punishment prior to an adjudication of guilt in accordance with law.
> For under the Due Process Clause, a detainee may not be punished prior to an
> adjudication of guilt in accordance with due process of law.

<u>Bell</u>, 441 U.S. at 535 (citations omitted). However, jail officials may subject pre-trial detainees to

"regulatory restraints" <u>See id</u>. at 537. In performing the analysis of whether a particular

condition amounts to prohibited punishment or permitted regulatory restraint, a

> court must decide whether the disability is imposed for the purpose of punishment
> or whether it is but an incident of some other legitimate governmental purpose.
> Absent a showing of an expressed intent to punish on the part of the detention
> facility officials, that determination generally will turn on whether [it has] an
> alternative purpose . . . and whether it appears excessive in relation to [that]
> purpose . . . . Thus, if a particular condition or restriction of pretrial detention is
> reasonably related to a legitimate governmental objective, it does not, without
> more, amount to "punishment." Conversely, if a restriction or condition is not
> reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court may
> permissibly infer that the purpose of the governmental action is punishment that
> may not constitutionally be inflicted upon detainees qua detainees.

<u>Bell</u>, 441 U.S. at 538-39 (citations, brackets and internal quotations omitted). The complaint

makes clear that the U.S. Marshal stated to the Allegheny County Jail staff to maintain Plaintiff

---

[11] To the extent that the Defendants cite to the Eighth Amendment standards for
convicted prisoners as the controlling standard, in light of the Third Circuit's statements in
<u>Hubbard v. Taylor</u>, 399 F.3d 150, the Court will utilize the standards of <u>Bell</u>.

in the DHU, ECF No. 15 at 18, ¶ 92, and that the reason was because he was deemed by the Marshals to be an escape risk.  Id., at 20, ¶ 98.  Thus, the complaint itself demonstrates that Plaintiff's placement in the DHU was done at the request of the Marshal, because the Marshal deemed Plaintiff an escape risk.  Given that the Marshals had determined that Plaintiff was an escape risk, and informed ACJ officials of such and requested that Plaintiff be designated as an escape risk, it is readily apparent that placement in a higher security setting serves a legitimate penological interest.  Hence, the complaint reveals that Plaintiff was not so much being punished as he was being placed in a higher security setting and thus, he fails to state a claim of a violation of his substantive due process right as a pre-trial detainee to avoid punishment.  See, e.g., Zimmerman v. Tippecanoe Sheriff's Dep't., 25 F.Supp.2d 915, 921 (N.D.Ind. 1998) (concluding that defendants' placement of inmate "with a propensity for escape attempts, in more secure housing without a hearing, and requiring that he wear leg irons when out of his cell, did not constitute punishment and did not violate his Fourteenth Amendment rights").

But what of Plaintiff's insistence that he was not an escape risk and that the Marshals were utterly mistaken in their assessment of him as such a risk.  The response is that the substantive due process protections do not provide protection against merely erroneous decision making.   Bishop v. Wood, 426 U.S. 341, 350 (1976).

It was within the discretion of the Defendants to determine for themselves whether Plaintiff was in fact an escape risk.  Given that the Marshal determined Plaintiff to be an escape risk, such a determination is completely within the Defendants' discretion and should not be overturned even if this court were to find to the contrary, i.e., that Plaintiff was not an escape risk and, this is so because the Defendants are entitled to make their own factual determinations; and

disagreements between, on the one hand, the Defendants' assessment of the evidence concerning the risk of escape Plaintiff posed and, on the other hand, this court's or even a jury's assessment of the evidence supporting his risk of escape, are not a basis for finding a violation of Plaintiff's constitutional right to substantive due process. In other words, for purposes of deciding whether Plaintiff was an escape risk, Plaintiff was an escape risk, unless and until the Defendants determine him not to be, and, even if the Defendants were erroneous in determining that he was an escape risk, such an error does not constitute a substantive due process violation. Bishop v. Wood, 426 U.S. 341, 350 (1976)("The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect . . . decisions"), *overruling on other grounds as recognized in*, Whims v. Harbaugh, 139 F.3d 897 (4th Cir. 1998) (Table, Text in Westlaw); Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (applying rule of Bishop v. Wood in a prisoner case); Palmigiano v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974)("There is no federally-protected right to a particular classification nor even to an error-free decision by the state authorities. 'The Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state.'")(quoting Snowden v. Hughes, 321 U.S. 1, 15 (1944) (Frankfurter, J., concurring)); Tansy v. Mondragon, 52 F.3d 338 (Table), 1995 WL 216926, at *5 (10th Cir. 1995) ("Even assuming that some of the allegations against Mr. Tansy were inaccurate, this does not establish a factual dispute as to whether he was deprived of substantive due process."). That the Defendants committed a factual error in the course of their determining whether Plaintiff was an escape risk and, therefore, worthy of placement in DHU, (assuming that they did do so erroneously) simply does not violate substantive due process. That this is the case should not be surprising. If it does not offend the constitution that an innocent

person is convicted of a crime, and made to suffer imprisonment as a consequence thereof, and, the Supreme Court has determined that it does not so offend,[12] then *a fortiori*, that a pre-trial detainee is "mistakenly" found to be an escape risk and made to suffer a greater loss of privileges in comparison to those in the general population, does not, merely because the determination is mistaken, violate the constitution.

Thus, Plaintiff's placement in the DHU fails to state a claim of substantive due process violation under <u>Bell</u>, even if his placement there was erroneous.

However, we must address whether his placement therein was a violation of his procedural due process rights.

We believe that the Defendants attempt to address this issue when they argue as follows:

> At Count Four, Plaintiff avers that Defendants "ACJ and Kovac" treated him with "deliberate indifference without cause" because he was "sent to an environment he was not even authorized to be in." (¶¶194-196. Presumably, this Count is related to the averment that Plaintiff was sent to the "eighth floor, Pod 8E, which is the disciplinary housing unit, hereinafter "DHU", also referred to as "the hole". (¶73). Count Four fails to state a claim upon which relief can be granted.

ECF No. 86 at 14. Several paragraphs later, the Defendants argue that such allegations only state a claim if they amounted to an atypical and significant hardship under <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). ECF No. 86 at 15. However, we note that <u>Sandin</u> does not apply to pre-trial detainees and so, Defendants fail to establish that Plaintiff's procedural due process rights were not violated by the 67 days spent in the DHU. <u>See</u>, <u>e.g.</u>, <u>Fuentes v. Wagner</u>, 206 F.3d 335,

---

[12] <u>See</u> <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993)("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief."). <u>See</u> <u>also</u> <u>id</u>. at 404 ("a claim of 'actual innocence' is not itself a constitutional claim").

341-42 n. 9 (3d Cir. 2000) (<u>Sandin</u>, which "concern[ed] punishment of a sentenced prisoner," was inapplicable to convicted but not yet sentenced detainee); <u>Benjamin v. Fraser</u>, 264 F.3d 175, 189 (2d Cir. 2001) (collecting cases). Hence, there remains a procedural due process claim against Defendant Butler for the 67 days Plaintiff spent in DHU while Plaintiff was a pre-trial detainee. <u>See</u>, <u>e.g.</u>, ECF No. 15 at 35, ¶ 186 ("The defendants of this count are BUTLER, ACJ, and the U.S. MARSHALL SUPERVISOR who acted in concert with each other to punish plaintiff without due process. . . .").[13]

Plaintiff complains of other occurrences when he was made to stay in solitary confinement or administrative custody. <u>See</u>, <u>e.g.</u>, ECF No. 15 at 26, ¶137; at 28, ¶ 149 (asserting that Plaintiff was kept in "the hole for 2 ½ months."). However, it appears that these other times occurred after Plaintiff had been convicted and sentenced, i.e., after July 15, 2008.[14] <u>See</u>, <u>e.g</u>, ECF No. 5 at 11, ¶ 58 (indicating Plaintiff was in general population from January 2008 until August 2008, when based upon a confrontation with Defendant Kovac, Plaintiff was again placed in segregated housing or solitary confinement). <u>Id.</u>, at 13, ¶¶ 69 to 76. We note that at the time he filed his present lawsuit, March 10, 2009, even assuming Plaintiff was in segregation or solitary confinement since August 2008, that would only amount to a period of time of roughly seven months.

---

[13] The U.S. Marshal was already granted summary judgment as to all claims, ECF No. 98, and the ACJ is being dismissed herein, *inter alia*, for lack of any allegation of a policy. Hence, that leaves only Defendant Butler remaining in regards to the procedural due process claim for the 67 days Plaintiff spent in the DHU as a pre-trial detainee.

[14] <u>U.S.A. v. Lacy Tilley</u>, No. 2:06-CR-222 (ECF No. 124 judgment of sentence entered on July 15, 2008, requiring Plaintiff to serve 87 months of incarceration for possession of a firearms by a convicted felon).

However, under <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), Plaintiff has failed to state a claim upon which relief can be granted. <u>See</u> <u>e.g.</u>, <u>Griffin v. Vaughn</u>, 112 F.3d 703 (3d Cir. 1997) (confinement in administrative custody for fifteen months with only one hour of exercise per day five days per week did not amount to an atypical and significant hardship and thus did not deprive prisoner of a liberty interest); <u>Siddiq v. Edlund</u>, 8 F.App'x 522, 524 (6th Cir. 2001) ("placement in administrative segregation [for twenty months] did not constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"); <u>Jones v. Baker</u>, 155 F.3d 810 (6th Cir. 1998) (administrative confinement for two and one-half years was not atypical and significant)(cited approvingly in <u>Fraise v. Terhune</u>, 283 F.3d 506, 523 (3d Cir. 2002)); <u>Bryant v. Cortez</u>, 536 F.Supp.2d 1160 (C.D.Cal. 2008)(placement of state inmate in administrative segregation unit for eighteen months pending resolution of disciplinary charge against him did not impose atypical and significant hardship on inmate in relation to ordinary incidents of prison life, and thus did not violate inmate's due process rights, even though placement entailed restrictions on inmate's exercise, shower, hygiene, and visitation privileges, and denial of work and educational opportunities, and state law required officials to conduct disciplinary hearing within thirty days); <u>Washington-El v. Diguglielmo</u>, No. 06-CV- 4517, 2008 WL 2954745 (E.D.Pa. July 29, 2008)(17 months in administrative custody is not atypical and significant so as to qualify as a liberty interest), *appeal dismissed and remanded by*, 365 F.App'x 338 (3d Cir. 2010); <u>Smith v. Luciani</u>, No. Civ. A. 97-3037, 1998 WL 151803, at *5 (E.D. Pa. March 31, 1998) ("In this case, plaintiff was subjected to seven months disciplinary time, a period of time half of that implicated in *Griffin*. Therefore, punishment of seven months in administrative custody, does not present 'the type of atypical, significant deprivation [in the

context of prison life] in which a state might conceivably create a liberty interest.' *Sandin*, 515

U.S. at 486 (1995)."), *aff'd*, 178 F.3d 1280 (3d Cir. 1999) (Table). Having been deprived of no

liberty interest, Plaintiff was not constitutionally entitled to any process. Hence, because the time

he spent in solitary confinement at any given stretch was less than 17 months and so no liberty

interest was at stake pursuant to Griffin, Plaintiff was not entitled under the federal Constitution

to any procedural protections. Nor do Plaintiff's allegations regarding the conditions of solitary

confinement (e.g., light on for 24 hours in the cell and no bed linens, ECF No. 15 at 23, ¶122),

sparse as they may be, establish that he endured an atypical and significant hardship.

Next, Plaintiff attempts to make out a Fourteenth Amendment deliberate indifference

claim, based upon his falling in the shower in October/November 2007 (at a time when he was

yet a pre-trial detainee) and allegedly injuring his mid-section.   The Court of Appeals explained

in an unpublished case that

> [a] claim by a pretrial detainee challenging the conditions of confinement
> in a state detention facility is analyzed under the Due Process Clause of the
> Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 157-58 (3d Cir.
> 2005). Where the challenge concerns medical care received at the facility, the
> applicable standard is the one set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976).
> *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir.2003).
> Under this standard, "plaintiffs must demonstrate (1) that the defendants were
> deliberately indifferent to their medical needs and (2) that those needs were
> serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (*citing Estelle*, 429
> U.S. at 106).

Watkins v. Cape May County Correctional Center (Medical Dept.), 240 F.App'x 985, 986 (3d

Cir. 2007).

Plaintiff fell in the shower on the evening before jury selection was to take place in his

first trial, i.e.,  No. 2:06-CR-222 ECF No. 5 at 5, ¶ 25. Plaintiff was seen by a nurse in the federal

courthouse the following morning, who determined that no visible blood was present in Plaintiff's urine. Plaintiff has not shown a denial of medical care but, at most, a delay of roughly 12 hours in obtaining medical care. He has alleged no further injury arising from this "delay" and thus fails to state a claim of deliberate indifference under the Fourteenth Amendment.[15]  Heard v. Sheahan, 148 F.App'x 539 (7th Cir. 2005)(Illinois inmate failed to show that jail officials acted with deliberate indifference toward inmate's serious medical need in violation of Fourteenth Amendment by delaying surgery for his hernia while he was in pre-trial detention, where inmate presented no evidence that jail administrators knew that the delays they were contemplating in scheduling surgery created a substantial risk of medical harm); Marshall v. Penn Tp., 2009 WL 3241873, at *10 (W.D.Pa. Oct. 6, 2009) ("Where, as here, the Fourteenth Amendment claim is based on delay in providing medical treatment, the delay does not rise to the level of a constitutional violation unless it results in substantial harm."). Cf. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993)("delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in . . . harm."); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000)("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in . . . harm."); Brooks v. Kyler, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (the prisoner-plaintiff "presented no evidence of any harm resulting from a delay in medical treatment.").

Moreover, even if Plaintiff could allege some harm, he could not adequately allege the requisite mindset as to the ACJ defendants because Plaintiff was seen by two nurses who saw

---

[15]  The Eighth Amendment standards would not apply to any time prior to July 15, 2008, because Plaintiff was not convicted nor sentenced yet. See, e.g., Lewis v. Downey, 581 F.3d 467, 474-75 (7th  Cir. 2009).

Plaintiff and, at least one of whom conducted a urinalysis. See, e.g., ECF No. 15 16 to 17, ¶ 83. Given that Plaintiff was seen by medical personnel, it cannot be said that the ACJ defendants were deliberately indifferent to Plaintiff's medical needs.

The general rule is that where a prisoner has been examined and/or is being treated by medical personnel, non-physician prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment. See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) ("The only allegation against either of these two [prison official] defendants was that they failed to respond to letters Durmer sent to them explaining his predicament. Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.")(footnoted omitted); Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D. Pa. 2001)("Prison authorities who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Similarly, health care administrators cannot be found deliberately indifferent when an inmate is receiving care from a doctor.")(internal citations and quotations omitted). This rule makes sense because a non-physician layperson cannot be deliberately indifferent to a prisoner's medical needs when he knows that the prisoner was examined by and/or treated by medical personnel and/or receiving treatment ordered by medical personnel, notwithstanding the prisoner's complaints about the treatments and/or alleged mis-diagnosis because a non-physician layperson has no expertise whereby to judge the adequacy *vel non* of the medical personnel's treatment/examination. Plaintiff has alleged nothing that would take this case outside of the general rule. Hence, Plaintiff's claim of deliberate

indifference under the Fourteenth Amendment fails to state a claim.

From the foregoing and our review of the operative complaint, it appears that there is only one other claim remaining, i.e., a claim that Defendant Kovac violated Plaintiff's rights under an Eighth Amendment standard applicable to convicted and sentenced prisoners or under the Fourteenth Amendment substantive due process standard, depending on whether the acts took place before or after July 15, 2008 (i.e., the date Plaintiff was sentenced in No. 06-CR-222) by subjecting Plaintiff to "punishment" in violation of the Fourteenth Amendment standards and/or by subjecting Plaintiff to "cruel and unusual punishment" in violation of the Eighth Amendment standards. See, e.g, ECF No. 15 at ¶¶ 103-118; 121; 125; 127; 129; 132-35; 139-40; 156-59; etc. We find these allegations sufficient to state a claim at this point and will not dismiss this claim against Defendant Kovac.

However, given that this is the only remaining claim (other than the procedural due process claim concerning the 67 days in DHU prior to Plaintiff's conviction, where Plaintiff implicated only Defendant Butler out of the remaining defendants) and the allegations of the complaint against the remaining Defendants Maust,[16] Kengerski,[17] and Coulter,[18] either do not concern this particular claim or, if the allegations of the complaint against them do concern this particular claim, the allegations are insufficient under Twombly and Iqbal, these defendants must be dismissed as well.

Accordingly, the Defendants' Motion to Dismiss is granted in part and denied in part.

---

[16] See ECF No. 15 at ¶¶ 48; 124; 139; 140; 150; 154; 156; 210; 216 -17; 224; 228; & 233.

[17] See ECF No. 15 at ¶¶ 122; 139; 154; 156; 203; 210; 216 -17; 224; 228; & 233.

[18] See ECF No. 15 at ¶¶ 134 -35; 140; 142; 228; & 233.

The motion is granted as to all defendants for all claims but it is denied as to Plaintiff's punishment/cruel and unusual punishment claims against Defendant Kovac and it is denied as to Plaintiff's procedural due process claim against Defendant Butler for the 67 days spent in DHU without any procedural protections.

SO ORDERED this 21st day of December 2010.

s/   Arthur J. Schwab
Arthur J. Schwab
U.S. District Judge

cc:      The Honorable Francis X. Caiazza
         United States Magistrate Judge


         Lacy E. Tilley, Jr.
         #142623
         Allegheny County Jail
         950 Second Avenue
         Pittsburgh, PA 15219


         All counsel of record via CM-ECF